SERENA M. MARTIN, Exrx. *et al.*

*v.*

SERENA M. MARTIN.

*Opinion filed October 24, 1898.*

| 174 | 371 |
|-----|-----|
| 81a | 641 |
| 174 | 371 |
| 181 | 213 |
| 174 | 371 |
| s89a | 149 |
| 174 | 371 |
| 191 | s631 |
| 174 | 371 |
| 101a | 642 |
| 101a | 643 |

1. BILLS AND NOTES—*possession of unendorsed note is prima facie evidence of ownership.* Possession of an unendorsed note is *prima facie* evidence of ownership in the holder, and the law will not require such possession to be surrendered upon the mere adverse claim of another until the latter has overcome the presumption of ownership by contrary proof.

2. EVIDENCE—*what not sufficient to overcome presumption of ownership of note.* Proof that the consideration for unendorsed notes, held by a niece of the payee under claim of ownership, was money loaned

by the payee to the respective makers, that the notes were delivered to the payee during his lifetime, and, although payable to himself or order, were not endorsed by him before his death, does not overcome presumption of ownership arising from possession.

3. SAME—*declarations of holder of unendorsed note as to ownership are admissible.* Declarations by the holder of unendorsed notes, during her possession thereof, to the effect that they had been given her by the payee before his death, are admissible in her favor, as tending to show her claim of ownership.

*Martin* v. *Martin,* 74 Ill. App. 215, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kendall county; the Hon. C. W. UPTON, Judge, presiding.

HENRY W. WOLSELEY, for plaintiffs in error.

ROBERT L. TATHAM, and HENRY S. WILCOX, for defendant in error.

HOPKINS, THATCHER & DOLPH, and N. J. ALDRICH, for interested legatees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The parties hereto are executors and executrix of the last will and testament of Edward Martin, deceased. They filed a joint petition in the county court of Kendall county, in which they represented that the executrix, Serena M. Martin, had in her possession, as an individual, a note executed by the Catholic bishop of Chicago to the decedent for the sum of $5500, and also another note executed by the Catholic bishop of St. Joseph, Missouri, to the said decedent, for the sum of $15,000, and that she claimed the notes as her individual property, and that the executors of the deceased claimed the notes in question constituted a part of the assets of the estate. The prayer of the petition was, that the court should hear and determine the question as to the ownership of the notes. The court heard the controversy and decided it adversely

to the defendant in error. She appealed to the circuit court of Kendall county, and a hearing was had in that court with like result as in the county court. She prosecuted an appeal to the Appellate Court for the Second District. The cause was submitted in the Appellate Court, and an order or decree entered reversing the decree of the circuit court and remanding the cause, with directions to the circuit court to enter a decree or order declaring the notes in controversy to be the property of the defendant in error, Serena M. Martin. This is a writ of error brought to reverse the judgment of the Appellate Court.

On the hearing in the circuit court the executors, Beers and O'Connor, voluntarily, and properly, as we think, assumed the position of petitioners or complainants and the defendant in error the position of defendant.

The petition averred that the notes in question were in the possession of the defendant in error under the claim they were her private property. The law will not require one in the possession of a chattel or security, negotiable or otherwise, under claim of ownership, to deliver the same over upon the mere adverse claim of another, but will only disturb such possession upon proof of the right of such adverse claimant,—that is to say, the presumption of the law is that one so in possession is *prima facie* entitled to remain in possession until the contrary is made to appear by proof. Any other rule would require every citizen to yield to the mere assertion of another. It therefore became incumbent upon the petitioning executors, in order to obtain favorable action upon the part of the court, to introduce such proof as would warrant an order that the defendant in error should deliver up possession of said notes. This they essayed to do. The only proof presented in that behalf was to the effect that the consideration of each of the two notes in question was money loaned by the testator in his lifetime to the respective makers of the notes; that the notes were executed by the makers and made payable to the testator or

his order, and were delivered to him during his lifetime and had not been assigned. This proof was not sufficient to warrant the court to make an order that the notes should be surrendered by the defendant in error to the representatives of the deceased. The possession of an unendorsed note is *prima facie* evidence of ownership in the holder. *Ransom* v. *Jones,* 1 Scam. 291; *Curtiss* v. *Martin,* 20 Ill. 557; 2 Parsons on Notes and Bills, pp. 52, 53, 444.

The right to the possession and full beneficial interest in an unendorsed negotiable paper may pass by manual delivery of the paper, and in the absence of testimony tending to disprove that the notes were delivered the presumption will obtain that one in the possession of such paper came rightfully into possession. Hence, this evidence alone considered, it seems clear the finding and order of the court should have been for the defendant in error. But the defendant in error proceeded to produce testimony in her own behalf to sustain her claim of ownership to the notes, and this testimony must be considered to determine whether it disclosed facts and circumstances adverse to her claim upon which the judgment of the trial court can be sustained.

It appeared from the testimony that Edward Martin was a man well along in years at the time of his death. He resided at Red Hook, New York, which place had long been his home. The defendant in error was his niece, and had lived with him since she reached the age of nine years, —a period of more than forty years,—and for fourteen years before his death had the full charge and care of his home. It was admitted by the parties that some time prior to his final illness he gave to the defendant in error other notes and securities of the aggregate amount of $50,200, all of which he duly endorsed and assigned to her in writing. She kept these securities in a bundle or package enveloped in a wrapper of "curtain calico," and this package or bundle she kept in a cupboard in the room occupied by her in the house of the deceased. It appeared

the deceased was possessed of certain securities which he kept in a tin box having a combination lock, called by him the "rat-proof box." He kept this box in a clothes press in the room which he occupied and where he slept. It was stipulated the notes in controversy have been in the possession of the defendant in error and her attorneys ever since the death of the testator.

The final illness of the testator began on Saturday, November 25, 1893, and terminated fatally on the morning of Sunday, December 3, 1893.   Elizabeth H. Martin, who was a niece and member of the family of the deceased and is a legatee under the will, testified that on either Tuesday or Wednesday prior to his death, and while he was confined to his bed in his last sickness, she passed through his room and saw him "bolstered" up in his bed; that the defendant in error was standing near the bed; that the "rat-proof box" was lying open upon the bed and the deceased and the defendant in error were engaged in looking at and handling some papers which were in the box; that some of the papers were lying on the bed, and that the deceased was looking at the defendant in error and talking to her.

Margaret J. Martin, a sister of the defendant in error and niece and legatee of the testator, testified she was standing near the door which opened from an adjoining room into the room where the testator was lying on his bed, on the occasion testified to by Elizabeth H. Martin, and that she saw the deceased sitting up in bed supported by pillows with his "rat-proof box" on the bed before him; that the defendant in error was near his bed and they were engaged in talking; that she saw the defendant in error take the box from the bed of the testator and put it in the place where it was kept in the clothes press, and that the defendant in error came directly to the witness and showed her one of the notes in controversy,—the $15,000 note given by the Catholic bishop of St. Joseph, —and made a remark to her in an ordinary tone of voice;

that the bed of the deceased was about nine feet away, and that there was nothing that the witness knew of to prevent him hearing, but that he made no reply. This remark was, that the deceased had given the note to her and told her to put it with her other papers. It was objected to, but was heard by the court and the determination of its competency reserved. This same witness testified that she first saw the other note,—that for $5500, given by the Catholic bishop of Chicago,—about two weeks before the death of the testator and prior to his last sickness; that she, the witness, and the defendant in error, were at the time in the room occupied by the defendant in error in the house of the testator; that the said testator came to the door of the room and asked the defendant in error for her papers; that she went to the closet, unlocked it, took out a package of papers which were done up in a piece of "curtain calico," and handed it to him and he went away with it; that he soon afterward returned, brought back the package and said to the defendant in error, "Serena, here are your papers," and went away; that the defendant in error opened the package and showed the contents to her, the witness, and that she, the witness, saw there, among other papers, the note for $5500 given by the Catholic bishop of Chicago and here in controversy. The witness testified that the defendant in error made a remark to her at the time she saw the note, but the court held the remark was not competent to be considered in evidence and refused to allow the witness to give the remark. Counsel on behalf of the defendant in error then offered to prove by the witness that the defendant in error, at the time in question, stated that the note she, the witness, was looking at,—the $5500 note,—was hers; that Martin had given them (the notes in the package) to her; but the court refused to allow the proof to be made.

This witness and one Jackson Jaques testified that on Sunday morning, the same day and a few hours after the

death of the testator, they saw both the notes in controversy; that the defendant in error went to a cupboard in the room occupied by her in the house of the deceased, unlocked the door of the cupboard and took out a bundle wrapped in "curtain calico;" that the defendant in error opened the bundle and that the witnesses examined the contents thereof; that the bundle contained eleven notes and some trust deeds, among the notes being the two in controversy, which, as both witnesses testify, they saw and identified. The defendant in error offered to prove by these witnesses that at the time the defendant in error exhibited the notes to them she told them the notes were hers; that her uncle, Edward Martin, had given them to her. The court refused to hear the proffered proof, but on a later day, while the cause was still on hearing, allowed the witness Margaret J. Martin to testify the defendant in error stated to her and Jaques at the time in question that the notes in the package, including those in controversy, belonged to her and that the deceased uncle had given them to her. The court, however, reserved decision as to the competency of the testimony, and subsequently sustained the objection to all declarations and statements of defendant in error about the notes in controversy as being incompetent, immaterial and self-serving.

The defendant in error testified that on Sunday morning after the death of her uncle, the decedent, she took the bundle of securities from her closet and showed them to her sister Margaret and Jackson Jaques; that the two notes in controversy were then in her possession in the package; that she had not put anything in the package after the death of her uncle; that from the time of his death until she went to the closet with her sister and Jaques she had not seen the notes and had not touched the package. This was, in substance and materiality, all the evidence produced in behalf of the defendant in error.

The testimony of one of the solicitors for the legatees under the will of the deceased, who acted as stenographer

on the hearing of the cause in the county court, which was produced in rebuttal, tended to show that the said witness Margaret J. Martin testified on that occasion that the deceased seemed to be in his right mind during his last illness and was able to write his name, and that the deceased, when he came into the room and asked the defendant in error for her bundle of papers, said that he wanted the papers for the purpose of endorsing some interest, and that he put the interest down on them and returned them to her. The witness Margaret J. Martin denied that she made such statements as a witness on the former hearing.

We find nothing in this testimony which can fairly be deemed to militate against the presumption of ownership arising from the possession of the defendant in error, or otherwise to operate adversely to her cause. Upon the contrary, we think a fair and impartial consideration of the testimony sufficiently establishes that the defendant in error came into possession of the notes by acts of the decedent done for the purpose of constituting her the owner thereof. The suggestion she held them for safe keeping, or otherwise, as a mere bailee, cannot be reconciled with the evidence.

We think the court erred in excluding from consideration such of the declarations of the defendant in error as amounted to a statement or claim of ownership in her. (*Rigg* v. *Cook*, 4 Gilm. 336; *Yates* v. *Shaw*, 24 Ill. 368; *Rowley* v. *Hughes*, 40 id. 316; *Amick* v. *Young*, 69 id. 542; *Whitaker* v. *Wheeler*, 44 id. 440; *Thomas* v. *Town of Butler*, 38 N. E. Rep. 808.) The other of her declarations sought to be proven related to past transactions, and were for that reason incompetent.

We concur in the conclusion reached by the Appellate Court, that the defendant in error should have prevailed in the circuit court. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*