JOHNSON, Administrator, Appellant, vs. BANK OF WISCON-SIN, Respondent.

*May 3—May 23, 1916.*

*Trial by court: Receiving evidence under objection: Presumption on appeal: Witnesses: Competency: Transactions with persons since deceased: Bills and notes: Renewal: Collateral security: Assignment of interest therein: Rights of administrator of debtor.*

1. Where the trial was by the court, improper evidence received under objection will be presumed not to have been given weight unless the contrary clearly appears.
2. Where plaintiff's counsel had offered to go into the whole of a transaction between the president of the defendant bank and plaintiff's intestate and had questioned such president in regard to some features thereof, the witness was competent thereafter, under sec. 4069, Stats., to testify on behalf of defendant to other features or details of the transaction not covered by his previous testimony.

3. Findings by the trial court that a renewal note given by plaintiff's intestate to the defendant bank was delivered unconditionally; that the collateral security for the old note was repledged for payment of the new note and all other indebtedness of the maker to the bank; and that the old note was not surrendered but was retained because the interest then due thereon was not paid or included in the renewal note, are *held* to be sustained by the evidence.

4. At the time of the death of plaintiff's intestate the defendant bank held several of his notes, with a large amount of collateral security. Interest amounting to $1,148.01 was due on such notes. Defendant loaned $7,500 to a land company organized to take over and handle certain property of doubtful value belonging to the estate, such company agreeing, as part consideration for the loan, to pay the $1,148.01 interest due to defendant. That arrangement was specially authorized by the county court as being advantageous to the estate. Defendant thereupon assigned its claim against the estate for said interest to the land company, agreeing that the collateral should "continue, as heretofore, proportionally and *pro rata*, security for the payment of said interest . . . until the same shall be fully paid" by the estate. Thereafter the land company transferred its rights under the last-mentioned agreement to the estate. *Held*, that such transfer operated to extinguish the indebtedness for interest and to remove the incumbrance which had been placed on the collateral for the benefit of the land company, and hence that plaintiff administrator did not thereby acquire a right to any of the proceeds of the collateral until the entire indebtedness of the estate to defendant should be fully paid.

APPEAL from a judgment of the circuit court for Dane county: JAMES WICKHAM, Judge. *Affirmed*.

The purpose of the action was to secure an accounting with defendant as regards the proceeds of some collateral claimed to have been pledged by decedent to the former to secure a particular promissory note, and to recover the surplus over what was necessary to satisfy such note. Defendant applied such surplus upon other indebtedness of decedent which it held, claiming that, subsequent to the collateral having been pledged to secure payment of the particular note, it was repledged to secure payment of all indebtedness of the decedent to it.

The purpose of the action was, further, to secure an accounting as regards the aforesaid proceeds and to recover a part of the surplus upon the theory that an interest in the collateral as security was assigned to plaintiff as administrator, incidental to an assignment to him of a part of the indebtedness for which the collateral was pledged. On this branch of the case, the claim of the defendant was that the alleged assignment was in fact a payment, freeing the collateral from any incumbrance thereon as against its interest therein. The issues raised by the pleadings and contested upon the evidence are indicated by the following summary of the findings made by the trial judge:

The note for $10,300, dated September 11, 1912, referred to in the complaint, was given by the decedent to defendant as a renewal of a note of the same amount, held by defendant, dated June 13, 1912, which is described in the pleadings. The renewal note was delivered unconditionally, but the old note was retained for the interest which had accrued thereon, that not having been paid or included in the new note.

The collateral security, mentioned in the pleadings, was sold by defendant and the proceeds applied to the indebtedness of decedent to defendant in all respects in accordance with the terms of the pledge of such securities and the order of the court in respect to the matter, leaving, at the time of the trial, a balance due defendant from the estate of decedent of $3,301.53 with interest thereon from January 30, 1914.

The claim, pleaded by plaintiff that he is entitled to the return of two certain land contracts, and a mortgage (forming part of the collateral security) or the proceeds of the same, is not supported by the evidence. At the time of the trial, no issue had been raised by the pleadings in respect to that matter and no claim was made that due credit had not been given in respect to such collateral. Subsequently, the pleadings having been amended, permission was granted plaintiff to support the allegation in respect to the particular matter by evidence, but none was offered.

By an instrument, executed and given by defendant to the Linden Hill Land Company, dated May 24, 1913, and an instrument executed and given by said company to plaintiff, in his representative capacity, dated May 31, 1913, the claim of $1,148.01, consisting of interest due defendant on notes of the decedent for which it held the collateral before mentioned in part as security, was extinguished as regards any right of plaintiff to any of the proceeds of the collateral, until the entire indebtedness of the estate of the deceased to defendant shall have been fully paid.

On such findings judgment was ordered in favor of defendant, dismissing the complaint with costs. Any further statement of facts necessary to an understanding of the case will be made in the opinion.

For the appellant there were briefs by *Gilbert & Ela* and *Paul D. Carpenter,* and oral argument by *Mr. Carpenter* and *Mr. Frank L. Gilbert.*

For the respondent there was a brief by *Olin, Butler, Stebbins & Stroud,* and oral argument by *John M. Olin* and *Ray M. Stroud.*

MARSHALL, J. Was the note of June 13, 1912, delivered to respondent, unconditionally, accompanied by a repledge of the collateral to the old note for the payment of the new one and all other indebtedness of the deceased to respondent? There was considerable other indebtedness, including interest on the old note. The transaction, in the main, was between Mr. Corry and Mr. Boyd, the respondent's president. The renewal note, so called, contained a recital that collateral had been deposited as security for its payment, followed by the words, "Collateral as per list attached, also on genl. a/c." Mr. Boyd was permitted, without objection, to testify that the added words meant that the pledge was to secure any indebtedness of the pledgor to the bank, and to testify, largely under objection, to the entire transaction between him on be-

half of the bank and Mr. Corry. The testimony, in the whole, tended quite strongly to support the claim of respondent that it was entitled to apply the proceeds of the collateral to the indebtedness on the particular note and any indebtedness it held against Mr. Corry at the time of his death. The court so found in the first and second findings, summarized in the statement. Such findings are challenged as contrary to the evidence.

The main ground upon which counsel for appellant challenge the findings, as above indicated, is that the testimony of Mr. Boyd, which was objected to, was incompetent and that without it, they are not supported by the evidence. True, if Mr. Boyd's evidence, so far as objected to, was incompetent under sec. 4069, Stats., and was vital to the findings, they cannot be sustained. It is not entirely clear that it was vital, or, if incompetent, the trial court gave controlling weight thereto in coming to the conclusions. Improper evidence taken in a court case under objection, is to be presumed not to have been given weight unless the contrary clearly appears. *Harrigan v. Gilchrist,* 121 Wis. 127, 312, 314, 99 N. W. 909. But, assuming that the evidence was vital and so considered, no error was committed because of appellant having so opened the door as to render it admissible. Appellant's counsel made the broadest kind of an offer to go into, with Mr. Boyd, the whole transaction, and his offer was accepted. They then interrogated the witness in regard to some communications and transactions between such witness and Mr. Corry. All the testimony which was objected to was directed to parts of the whole matter which counsel consented to have laid before the court. True, such testimony went to many details not referred to in that drawn out by counsel for appellant; but all related to the matter, in its entirety, and so was clearly competent.

Counsel seem to think that they opened the door by the offer and examination only as to the particular features of

the whole transaction which they interrogated the witness in respect to; but such is not the statute.   When the door is once opened for one to testify to a communication or transaction had by him personally with a deceased person, the witness may testify, not only to the facts of such communication or transaction, first brought out, but to all "matters to which" the testimony in the opening "relates."   Such is the plain meaning of the statute.

Treating, as it seems we must, all the testimony of Mr. Boyd as having been properly received and considered, the finding of unconditional delivery of the renewal note, re-pledging of the collateral, and sale and application of the pro-ceeds thereof to the particular and other indebtedness, leav-ing a large balance due respondent, in all respects according to the terms of the pledge, is supported by the evidence.   It does not seem to be required that we should state, in detail, what Mr. Boyd's evidence was.   The effect of it, in connec-tion with the other evidence, taken at its face value, seems to be conceded to form a pretty sound basis for the findings. There are some features of the case bearing on the credibility of Mr. Boyd's evidence, but nothing of a conclusive character, or that was not explained to the satisfaction of the court be-. low with reasonable ground therefor.

The controversy in respect to such part of the proceeds of the collateral as the $1,148.01, mentioned in the last finding of fact, bears to the entire Corry indebtedness to respondent, as of the time such collateral was realized on, and the facts in respect thereto do not, perhaps, as clearly appear from the statement as is necessary to a full understanding of the mat-ter.   Such controversy is covered by the last finding of fact. That is said to be contrary to law and unsupported by the evidence.

At the time of the decease of Mr. Corry, he had some as-sets of doubtful value.   The administrator seems to have re-garded the same as not much better than mere possibilities

without use, in connection therewith, of a considerable sum of money, and administering the property otherwise than as an administrator could well do. In that situation, with approval of the court, a corporation was formed to take over and handle such property and procure the necessary money to efficiently do it. The name of the corporation was "Linden Hill Land Company." The success of the venture and the interests of the estate were largely dependent upon financial assistance by respondent. In due course, respondent, with the approval of the court, arranged to loan the estate agency, said Land Company, $7,500, said company, as part consideration, agreeing to pay the former the interest due it on Corry indebtedness, amounting to $1,148.01. The arrangement in respect to the matter was presented to the court, and specially authorized and directed to be carried out as advantageous to the estate. Pursuant to the order in respect to the matter, respondent, in writing, assigned its claim against the estate for interest to the Land Company, with the collateral held by the bank, in the proportion which the indebtedness assigned bore to the entire Corry indebtedness so held, "to continue, as heretofore, proportionally and *pro rata,* security for the payment of said interest . . . until the same shall be fully paid by the Corry estate." Shortly after the making of such assignment, the Land Company, in form, transferred its rights thereunder to the administrator of such estate. In the order of the court, the assignment to the Land Company was designated as "assignment and receipt for interest due *Bank of Wisconsin.*"

Considering all the circumstances in relation to the transaction, the trial court held that the purpose thereof was to have the corporation hold the indebtedness assigned as an outstanding claim against the Corry estate, and to have an interest in the collateral for its protection,—not that of the estate or its general creditors,—such interest to lapse upon the assigned indebtedness being paid or otherwise extinguished

by such estate; and that when the estate acquired such in-
debtedness, it must have acted in harmony with the spirit of
·the whole deal.   In that view the finding was made that the
assignment by the bank to the Land Company, and the satis-
faction of the latter by the subsequent transfer of the indebt-
edness to the Corry estate, operated to extinguish it and re-
move the incumbrance placed on the collateral for the protec-
tion of the Land Company; that to hold otherwise and to per-
mit the estate, which was not intended to be protected by the
collateral, to be so protected, would be inequitable and sanc-
tion the use of the assignment for a purpose not intended and.
in such manner as to perpetrate a fraud, since the entire pro-
ceeds of the collateral come far short of covering the bank's
indebtedness.   That evidently is the logic underlying the
court's finding.   It is easily read out of the language used.
The finding closes with the words, "Under the facts of this
case, it would be inequitable to permit the plaintiff to enforce
its claim against defendant or against any portion of the col-
lateral security in the defendant's hands, until the defendant
has been fully paid its claim against the deceased."

What the meaning, intent, and effect was of the two papers,
is not entirely clear.   There are many minor circumstances
appearing in the evidence which tend to reinforce the major
features referred to, in support of the trial court's view.
The assignment by the bank to the Land Company, in view
of all the facts, is somewhat ambiguous.   The feature that
the collateral should remain ˙proportionally as security· for
payment of the assigned interest until such interest should be
fully paid by the Corry estate, is repugnant to the idea that
such estate could, instead of paying the claim, buy it and re-
coup out of the collateral.   It seems the idea was that it
could only acquire such claim, in harmony with the whole
transaction, by paying it or doing something equivalent there-
to as regards the collateral.   When the bank loaned the
$7,500 to the Land Company, with the understanding that its

interest claim should be paid, it could not have thought that it might be acquired by the Corry estate and held as a claim upon the collateral.   On the whole, we incline to the view of the trial court, embodied in the finding, that the effect of what was done was to extinguish the indebtedness which was assigned to the Land Company.   That is in harmony with what the county court, the administrator of the estate, and the officers of the bank evidently supposed would be done when the loan of $7,500 was arranged for.

The foregoing, it seems, covers all features of the case which merit attention.

*By the Court.*—The judgment is affirmed.

SIEBECKER, J., took no part.