## M. W. GIBSON v. J. W. BUIS et al.*

### (Knoxville. September Term, 1919.)

1. **WITNESSES.** Conversations with decedent incompetent to prove gift, but admissible in rebuttal.

In an action by an executor to have a payment made by testator charged against a legacy as an advancement, it was competent for the legatee to testify as to a conversation had with the testator to rebut testimony of the executor as to admissions made by the legatee, but not to prove that the money given her by the testator was given as a gift and not as an advancement. (*Post*, *pp.* 137, 138.)

Case cited and approved: Martin v. Martin, 174 Ill., 371.

Cases cited and distinguished: Harris v. Cable, 113 Mich., 192; Campbell v. Sech, 155 Mich., 634.

2. **WILLS.** Gifts to legatee by testator during life presumed ademption of legacy.

Where testator after executing a will made gifts to a legatee, the presumption is that such gifts were intended as an ademption of the legacy bequeathed in the will, especially where the will stated, "I may be able to pay a part or all of said amount during my lifetime, and whatever amount I do pay will be credited upon said amount herein directed to be paid by my executor." (*Post*, *pp.* 138-140.)

Case cited and distinguished: Evans v. Beaumont, 72 Tenn., 603.

3. **WILLS.** Clear and convincing testimony necessary to rebut presumption that gift was ademption.

Where will stated concerning a legacy, "I may be able to pay a part or all of said amount during my lifetime, and whatever amount I do pay will be credited upon said amount herein directed to be paid by my executor," the burden was upon the legatee, in an action by the executor to charge the legacy with money given

*Authorizing passing upon the question as to whether gift by testator is ademption of general legacy to donee are collected in notes in 38 L. R. A. (N. S.), 588; L. R. A., 1916C, 618.

to the legatee by the testator after the execution of the will, to show by clear, cogent, and convincing evidence that the money paid to her was not intended as an advancement. (*Post, pp.* 140. 141.)

4. **WILLS. Evidence insufficient to overcome presumption that money paid legatee worked ademption of legacy.**

In an action by an executor to have money paid by testator during his lifetime charged to a legatee as an advancement, evidence on the part of the legatee *held* in sufficiently clear, cogent, and convincing to show that the money was not intended as an advancement. (*Post, pp.* 140, 141.)

### FROM CLAIBORNE.

Appeal from Claiborne Chancery Court.—Hon. John Jennings, Jr., Chancellor.

Montgomery, Donaldson & Montgomery, for appellant.

Wm. I. Davis and J. R. Ketron, for appellees.

Mr. Justice McKinney delivered the opinion of the Court.

E. J. Gibson died testate at his home in Claiborne county on February 11, 1917, leaving surviving him his widow, Mary C. Gibson, who died March 3, 1917, one son, the complainant, M. W. Gibson, whom he named executor of his will, and two daughters, Mrs. Ollie Parkey and the defendant Mrs. Minnie Buis.

The testator left an estate worth, according to the testimony, $70,000 or $75,000. He bequeathed $10,000 to each of his daughters, and, after giving certain of his other property to his wife for life, gave the re-

mainder interest therein, as well as the residue of the estate, to his son, the complainant, M. W. Gibson.

The will of the testator was executed on January 27, 1915. The provision thereof by which he made the bequest to his daughter Mrs. Minnie Buis is as follows:

"I give to my daughter Minnie Maude Buis, the wife of J. W. Buis the sum of ten thousand dollars ($10,000) in addition to the advancements heretofore made to her. This amount will be paid to her by my executor within one year from the date of my death with interest from the date of my death unless I shall pay any or all of said amount before my death. I may be able to pay a part or all of said amount during my lifetime, and whatever amount I do pay will be credited upon said amount herein directed to be paid by my executor."

On October 21, 1916, the testator executed a check for $1,000, payable to J. W. Buis & Son (husband and son, respectively, of the defendant Mrs. Minnie Buis), which was indorsed by them, paid by the bank, and charged to the account of Mr. Gibson.

The executor, upon finding this canceled check at the bank, after his father's death, called to see Mrs. Buis and insisted that this check be charged to her either as a loan or as an advancement. She declined to so treat it.

Thereupon, on October 6, 1917, the bill was filed in this cause alleging that the $1,000 was intended as a payment on the bequest made in the will, and praying that Mrs. Buis be charged therewith in her settlement with the executor.

Mr. Buis and his son were also made defendants, the bill praying in the alternative for judgment against them for the $1,000 as for money had and received.

The complainant testified as to a conversation had with his sister Mrs. Buis as follows:

"Q. State whether or not you ever had a conversation with your sister, the defendant Mrs. Buis, about the $1,000 check that your father issued to J. W. Buis & Son, and which check you have filed as 'Exhibit B' to your deposition? If you did, please take your time and state what Mrs. Buis said to you about that check?

"A. Well, I stopped over there one day to make her a payment—the first payment I ever offered to make her—and I named this $1,000, and I wanted her to take it in in the payment, and she said my father gave it to her, and refused to take it in as he had given it to her. Then I did not make any payment on that ground. I expected to make it, but did not after she did not take in the $1,000 check."

The defendant J. W. Buis, husband of Mrs. Minnie Buis, testified that his wife borrowed the $1,000 from Mr. Gibson to buy cattle with, and that as he was going to buy the cattle as a matter of convenience he (Buis), who wrote the check, made it payable to Buis & Son. This evidence is not controverted.

Mrs. Buis insists, however, that subsequently her father gave her the $1,000 claim which he had against her on account of said check. Mrs. Buis does not deny that originally she borrowed this money from her father, but insists that subsequently her father gave her this indebtedness. This insistence is based on her

Gibson v. Buis.

unsupported testimony, which was objected to by the complainant. Quite a controversy has arisen as to the competency of this evidence, the defendant conceding that ordinarily it would not be competent, but insists that, since complainant undertook to bind Mrs. Buis by alleged admissions made by her, it is competent for her to narrate in detail the conversation in its entirety.

In the first place, the complainant does not testify as to any damaging admissions made by his sister. He testified that she told him that her father gave her his indebtedness. In any event, we think her testimony was only competent to the extent of showing that in this conversation she claimed the thousand dollar indebtedness was given to her, and that it was not competent to prove the gift. It was competent to rebut the testimony of her brother as to admissions made by her, but was not competent as substantive testimony of the gift. 20 Cyc., 1223; *Martin* v. *Martin,* 174 Ill., 371, 51 N. E., 691, 66 Am. St. Rep., 290; *Harris* v. *Cable,* 113 Mich. 192 71 N. W., 531; *Campbell* v. *Sech,* 155 Mich., 634, 119 N. W., 922.

The syllabus to *Harris* v. *Cable* is as follows: "On an issue whether a note was given by testator to defendant, his housekeeper, evidence that when defendant produced the note, at a legatee's request, she said that it was hers by gift, is admissible to rebut an inference against her ownership of the note from the circumstances of the production of it, though incompetent as evidence of the gift."

And on page 195 of 113 Mich., on page 532 of 71 N. W.; the court said:

"Miss Cable was allowed to testify that, when she produced the note at the plaintiff's request, she accompained it with the statement that it was hers by gift from the testator. This was not admissible as substantive evidence of the gift but it was admissible in its tendency to rebut the inference of an admission against her ownership sought to be drawn from the production of the note under the circumstances shown." And in *Campbell* v. *Sech,* supra, on page 637 of 155 Mich., on page 923 of 119 N. W., the court said:

"Defendant Nettie testified in her own behalf, and was shown by her counsel the bank book of the defendant bank, showing the item of $838.60, and asked: 'That is yours, is it? A. Yes, sir.' She further testified that she told Mrs. Sahms, her sister, that her father had given her the $800. She also introduced evidence of statements made by her to other persons that he had given her $800. Nettie was entitled to deny the conversations as to her admissions, and to state what the conversations were. She also was entitled to show that she claimed the money as hers. These statements, however, were not admissible as substantive evidence of the gift, but to repel the inference of an admission against her ownership."

Excluding Mrs. Buis' testimony which is incompetent, there is evidence in the record to sustain her contention. Furthermore, conceding it to be a gift, the presumption is that it was intended as an ademption of the legacy bequeathed in the will.

In *Evans* v. *Beaumont*, 4 Lea, 603, this court said:

"In the case of a gift by will to a child, or one in the place of a child, and subsequent gift of substantially like kind and degree of benefit, without other evidence, under the rule, the law raises a presumption of satisfaction or ademption of the legacy of the subsequent gift, either in whole or in part, as its value may be."

And on page 605 of 4 Lea, the court further said:

"Conceding that parol testimony may be admitted to show the intention of a testator by a subsequent gift, either where the subsequent gift is *ejusdem generis* or otherwise, and that there is a question of intention, as seems to be the principle given by the leading authorities, yet, we think, in any view of it, such intention must be shown by clear and most satisfactory testimony in a case like the present."

This intention is largely augmented by the language of the will where the testator says:

"I may be able to pay a part or all of said amount during my lifetime, and whatever amount I do pay will be credited upon said amount herein directed to be paid by my executor."

In addition, Mrs. Rachel Gibson, wife of the complainant, testified that the testator had been sick for some time, but that on the day before he died he was so much better that the doctor told him that it would not be necessary for him to come to see him any more, and that after the doctor left the testator said "that as soon as he was able to he must go down and straighten out that business with Minnie and get a note for it."

While, as stated in *Evans* v. *Beaumont,* supra, this evidence is entitled to very little weight, yet when taken in connection with the clear provision of the will, the presumption that it was intended as an ademption, the admission that this was originally a loan, the rule requiring such evidence to be clear, cogent, and convincing, we are of the opinion that the unsupported testimony of Mrs. Buis, even if competent, would not be sufficient to prove that this $1000 was not to be treated as an advancement.

Mr. W. C. Parkey testified, in substance, that the testator told him that he had expended $1,600 for his son in his race for county trustee and that he intended to make his two daughters equal with him. The inference which counsel for the defendants draw from this is that Mr. Gibson, in order to carry out this expressed purpose, gave this $1,000 to Mrs. Buis. It appears that the complainant was a candidate for trustee in 1914. The will was executed in 1915. Mr. Parkey does not testify as to when he had this conversation with the testator, so that it could have been prior to the execution of the will, and may have been taken into consideration by the testator in disposing of his property. Even though this conversation was subsequent to the execution of the will, it would make very little difference. People often express intentions relative to the disposition of their property which they neglect to carry out, or which for satisfactory reasons, they abandon. This testimony is no more than the law would presume, viz., equality by the testator in the distribution of his property among his children. If Mr. Parkey's evidence can be treated as

a corroborating circumstance, it is, to say the least of it, a very weak one.

In Abbott's Trial Evidence (3 Ed.), vol. 1, p. 182, the author says:

"Since the common-law incompetency resulting from interest has been removed, the question of the value of an interested witness' testimony against a decedent's estate has been much discussed. The English courts, without any express statute, hold that the testimony of a party to personal transactions with the deceased, which exonerate himself, is not sufficient, at least in equity, to sustain a decree, unless corroborated.

Nobody would be safe in respect to his pecuniary transactions, if legal documents found in his possession at the time of his death, and endeavored to be enforced by his executors, could be set aside, or varied, or altered, by parol evidence of the person who had bound himself. It would be very easy, of course, for anybody who owed a testator a debt to say, 'I met the testator and gave him the money.' The interests of justice and the interests of mankind require such evidence should be wholly disregarded."

Such claim as that made in this cause as a matter of public policy should be sustained by clear, cogent, and convincing testimony. In this cause under the law, excluding the evidence of a party to the transaction, there is no evidence to sustain the claim of the defendant.

We are therefore of the opinion that the chancellor was correct in holding that Mrs. Buis should account for this $1,000 in her settlement with the executor, and his decree is in all thing affirmed with costs.