(No. 17137.—Appellate Court reversed; circuit court affirmed.)
RICHARD J. COLLINS, Defendant in Error, *vs.* CHARLES L.
OGDEN, Plaintiff in Error.

*Opinion filed December 23, 1926.*

1. PRACTICE—*section 52 of Practice act, as to denial of instruments sued on, does not apply to chancery cases—mortgages.* Section 52 of the Practice act, which forbids the denial of the execution or assignment of an instrument of writing on which an action has been brought, or which has been pleaded by way of defense or set-off, unless such execution or assignment is denied by affidavit, has no application to a suit to foreclose a mortgage, as the practice in chancery is governed by the Chancery act except where otherwise clearly expressed or implied in the Practice act.

2. BILLS AND NOTES—*party having legal title must sue in his own name.* The party having the legal title to a promissory note must sue in his own name.

3. SAME—*mere possession of note unindorsed by payee or special indorsee is not evidence of title.* While an equitable interest in negotiable instruments payable to order may be acquired either by gift or contract without indorsement by the payee, the mere possession of negotiable securities payable to order and not indorsed by the payee, or, if indorsed specially, not indorsed by the special indorsee, is not, alone, evidence of title, either legal or equitable, in the possessor, but the burden is on the possessor to prove his equitable title by showing a delivery to him with intent to pass title.

4. SAME—*indorsements are presumed made as dated.* The presumption is that all indorsements are made at the dates they bear.

5. SAME—*when party cannot be held to be an indorser.* Where a party to whom a promissory note has been specially indorsed makes a notation of an interest payment on the back of the note and signs his name thereto, such signature clearly indicates an intention to be bound only for the receipt of interest, and the party cannot be held to be an indorser under either section 17 or section 63 of the Negotiable Instrument act, there being nothing on the note to indicate that the signature was placed thereon as an indorsement or to transfer the title.

6. APPEALS AND ERRORS—*when assignment of error on master's ruling is not sustained.* An assignment of error on the master's

action in overruling the complainant's written motion to offer additional evidence is not sustained where the motion is not renewed in the circuit court, no ruling is made thereon, and no statement is made as to what the proposed additional witnesses would testify.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Knox county; the Hon. WALTER C. FRANK, Judge, presiding.

MARSH, RICE & THOMPSON, for plaintiff in error.

W. P. QUINBY, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Knox county dismissed the bill of Richard J. Collins to foreclose a mortgage. On the appeal of the complainant the Appellate Court for the Second District reversed the decree and remanded the cause, with directions to enter a decree of foreclosure. The record has been certified to us in compliance with a writ of *certiorari* issued on the petition of Charles L. Ogden, who was made a defendant to the bill under the allegation that he claimed some interest in the premises.

Kate L. Parker and Harry E. Parker, Jr., her husband, on July 10, 1897, executed a note to the order of O. F. Price, due two years after date, for $1000, with seven per cent interest, payable semi-annually, together with a mortgage on a lot in Galesburg to secure its payment. The payee died and his personal representatives indorsed the note to E. B. Wade on July 10, 1906. Kate L. Parker died on May 30, 1909. Various payments appear indorsed on the note during the nine years it had been running, never amounting to enough to pay the interest due at the time of any payment. Another indorsement of $65 appears under the date of July 11, 1906, making the amount of all payments shown on the back of the note to that date $505.

Below all these indorsements of payments appear the words, "to July 10, 1906." Under these words appear the follow-. ing additional indorsements:

"to

| Jan. 10-07 | 30.00 |
| July 10-07 | 30.00 |
| Jan. 10-07 | 30.00 |
| June 10-07 | 30. |

Int. Pd. to Jan. 10/09 E. B. Wade"

The note was on a printed form which was nearly square and was folded lengthwise in the center of the sheet, with the writing inside. By the crease formed by so folding the paper the back of the note was divided into two equal parts, and all these indorsements in regard to interest were written on the half of the paper to the right of an observer holding it before him with the indorsements right-side up. The first indorsement is about one-third of the length of the paper from the top, and the others, following in regular succession, occupy all the remainder of the space on the right side of the crease, the last line being within an eighth of an inch of the bottom of the paper. Above these indorsements is an indorsement by G. L. Price, executor of O. F. Price, to Laura S. Price, without recourse, which occupied about one-half the blank space above the indorsements of payment, and the remaining inch of space above this indorsement was blank at the time the indorsements of payments were made. On the left side of the paper in January, 1909, appeared the indorsements of the note to E. B. Wade by Price's personal representatives, occupying about the upper two-thirds of the space, the remaining one-third of that side being blank. This was the condition until December 2, 1910, nearly two years later, when an indorsement of the note, without recourse, was written in the blank space on the left side of the back of the note, which was not signed by any person. For eight years longer the note remained in this condition, and then, under the date of December 2, 1918, it appears that there was written in the

blank space at the top of the right side of the back of the note the following: "I hereby renew my promise to pay the within note.—Harry E. Parker, Jr." Photographs of the face and back of the note appear in the record which show the exact situation of the indorsements, as follows:

At the taking of evidence before the master the complainant offered a copy of the note with its indorsements, which was admitted with the understanding that the origi-

nal must be produced, and it was stipulated that the original note should be considered as substituted for the copy offered in evidence, subject to the right of the plaintiff in error to object to such offer, and when the original note was offered the plaintiff in error did object because it was not offered by the payee or any assignee of the payee; because the possession of it by the complainant, who was a stranger to it, was not accounted for in any way; because no consideration was shown to have passed from the complainant to the payee or any assignee; and because the Statute of Limitations has run. The first two of these reasons raised the question of the complainant's title to the note. When the objection is made to a note offered by a complainant that it is not offered by the payee or an assignee the objection may be said to be somewhat argumentative, but there can be no doubt that the objection, where the note on its face shows that the complainant is not the payee, is that the complainant is not the assignee and therefore is not the owner of the note. This note purported to be assigned by the representatives of the payee to Wade and by a stipulation such assignment was admitted, but the indorsements did not purport to show an assignment by Wade and no such assignment was admitted. The bill alleged such an assignment, which was denied.

Section 52 of the Practice act, which forbids the denial of the execution or assignment of an instrument of writing on which an action has been brought, or which has been pleaded by way of defense or set-off, unless such execution or assignment shall be denied by affidavit, has no application to cases in chancery. The practice in chancery is governed by the Chancery act (chapter 22 of the Revised Statutes) and not by the Practice act, except in cases expressly or by clear implication referred to in the latter act. (*Moore v. Tierney,* 100 Ill. 207; *Cavanaugh v. McConochie,* 134 id. 516; *Railway Conductors' Ass'n v. Robinson,* 147 id. 138;

*Brinkman* v. *Bowles,* 280 id. 27; *People* v. *Murphy,* 296 id.
532.) The burden of proof was therefore on the defendant
in error to prove the execution of the indorsement by Wade.
On this issue he introduced no evidence whatever other
than the paper itself, and he argues that the possession of
the note is *prima facie* evidence of the legal title to the in-
strument. In *Burnap* v. *Cook,* 32 Ill. 168, it is said that
this court has repeatedly held, and the doctrine has been
uniformly maintained and generally acquiesced in for such
a length of time that it should not now be disturbed, that
the party having the legal title to a promissory note must
sue in his own name, citing *McHenry* v. *Ridgely,* 2 Scam.
309, and *Campbell* v. *Humphries,* id. 478.

In *Porter* v. *Cushman,* 19 Ill. 572, an action was brought
by Maria Cushman on a promissory note payable to L. De-
Puy and indorsed by the payee to James Strain or order.
On the trial the plaintiff's counsel erased the name "James
Strain" and substituted the plaintiff's, making the indorse-
ment read, "Pay Maria Cushman or order," and a verdict
was returned in favor of the plaintiff for the amount of
the note, for which a judgment was rendered. In reversing
the judgment this court held that the court erred in permit-
ting the plaintiff to strike out the name of Strain and in-
sert her own as indorsee. The court said that in actions
upon commercial paper "courts of law have, as far as pos-
sible, adapted their rules of proceedings to the principles
of equity, so that they may, even upon the trial, allow an
equitable holder of commercial paper to invest himself with
the legal title by erasing indorsements and filling up blanks
in indorsements; but this can only be done where the party
proposing so to change the legal title to the paper is shown
by the proof or is presumed by the law to be the equitable
owner of the paper, and the question here is whether there
is any such presumption of law in favor of the plaintiff
below, for no proof was offered on the subject. Where
the payee or indorsee of commercial paper has put it into

circulation by an indorsement in blank, the law will presume that whoever is found in possession of the paper holds it rightfully, and he may bring an action upon it and upon the trial fill up the blank indorsement with his own name, so as to invest him with the technical legal title and thus enable himself to maintain the action. * * * When the paper is found in the hands of a stranger to it, with a special indorsement, the law cannot presume that it has come rightly into the hands of the holder. That would defeat the very object of the special indorsement, which is to notify the world that it can only be transferred to a stranger by the actual indorsement of the special indorsee; and especially is it notice to the maker not to pay to anyone but the special indorsee. If he pays it to a stranger when he is thus notified that it, *prima facie* at least, belongs to another, he must take the risk of being able to show that the person to whom he paid it was the rightful holder. When the special indorsee negotiates the paper to a stranger the presumption must be that he indorses it and thus parts with the legal as well as the equitable title to it. If it is found in the hands of a stranger without such legal transfer, the presumption is that it has been lost or purloined or otherwise improperly got into circulation. Were the presumption otherwise the very object of a special indorsement, which is to guard against such accidents, would be defeated, and those safeguards which the law has for the convenience of commerce thrown around negotiable paper would be destroyed." This case was followed in *Moore* v. *Maple*, 25 Ill. 341, and *Lockridge* v. *Nuckolls*, id. 178. *Newman* v. *Ravenscroft*, 67 Ill. 496, and *Hall* v. *Freeman*, 59 id. 55, are to the same effect that the legal holder of a note, alone, can maintain an action on it.

In *Bonner* v. *Gordon*, 63 Ill. 443, the plaintiff, William Bonner, declared on a promissory note payable to his order, by the name and style of the First National Bank of Centralia. A demurrer to the declaration was sustained, and

the court, in reversing the judgment in favor of the defendant, stated that it was extraordinary that Bonner should have taken a note payable to himself by the name and style of the First National Bank of Centralia, but the demurrer admitted that he did so and that the defendants gave it. The judgment was reversed, but the court took occasion to remark that on the trial the mere production of the note would not prove the averment in the declaration that the note was made payable to the plaintiff by the name and style of the First National Bank of Centralia but the fact would have to be proved on the trial.

The cases cited were actions at law, but they establish the rule of evidence, which is as binding in equity as in law, that the mere possession of a promissory note payable to the order of a person who has not indorsed it, or who has indorsed it to a named indorsee who has not indorsed it, is not evidence of the legal or equitable ownership of the note by the possessor. While the contrary has been held by the decisions of some other States, particularly such as have adopted a code of practice which has abolished common law rules and all distinction between legal and equitable causes of action and declared that all actions upon promissory notes shall be brought by the real party in interest, this court has always followed the rule announced in *Porter* v. *Cushman, supra,* where the question was thoroughly considered and the reason of the rule well stated that were it otherwise the very object of the special indorsement would be defeated and the safeguards thrown around negotiable paper would be destroyed.

The defendant in error relies upon the case of *Martin* v. *Martin,* 174 Ill. 371, in which the statement is made that the possession of an unindorsed note is *prima facie* evidence of ownership in the holder. It was further said that "the right to the possession and full beneficial interest in an unindorsed negotiable paper may pass by manual delivery of the paper, and in the absence of testimony tending to dis-

prove that the notes were delivered the presumption will obtain that one in the possession of such paper came rightfully into possession. Hence, this evidence alone considered, it seems clear the finding and order of the court should have been for the defendant in error. But the defendant in error proceeded to produce testimony in her own behalf to sustain her claim of ownership to the notes, and this testimony must be considered to determine whether it disclosed facts and circumstances adverse to her claim upon which the judgment of the trial court can be sustained." After consideration of the evidence the conclusion was stated that nothing in the testimony could fairly be deemed to militate against the presumption of ownership arising from the possession of the defendant in error or otherwise to operate adversely to her cause. "Upon the contrary, we think a fair and impartial consideration of the testimony sufficiently establishes that the defendant in error came into possession of the notes by acts of the decedent done for the purpose of constituting her the owner thereof." That case concerned the ownership of unindorsed notes in the possession of a niece of the deceased payee and held under a claim that the notes had been given to her by the payee before his death. The facts in regard to the case are more fully set out in the previous case of *Martin* v. *Martin,* 170 Ill. 18.

In the case of *Adams* v. *Adams,* 181 Ill. 210, which was decided within a year after the case of *Martin* v. *Martin,* 174 Ill. 371, by the same judges, the court said: "We agree fully with the Appellate Court that the case of *Martin* v. *Martin,* 174 Ill. 371, cited and relied upon by appellant, has no bearing upon the issue here. In that case the person holding the property in dispute did not rely upon mere possession as her evidence of ownership but upon proof which clearly showed that she was put in possession of the property as the owner, and not in any sense as an agent or in any other capacity than that of owner."

*Rothwell* v. *Taylor,* 303 Ill. 226, involved a question of a gift of negotiable instruments without indorsement or written assignment by the payee to her niece, who was shown to have had possession of the instruments a short time before her aunt's death and claimed title to them by gift. It was held that while it is well settled that negotiable instruments may be the subject of valid gift without indorsement or written assignment by the payee if delivered to the donee by the payee with intent to transfer the title, the burden of proof of the gift is on the donee to prove all facts essential to a valid gift, and these facts include the delivery by the donor to the donee with intent to pass the title. The only facts proved showed that the niece had possession of the notes and certificates before the payee's death and claimed to own them, and it was held that this proof did not meet the requirements of the law to pass title in such cases. The case of *Martin* v. *Martin,* 174 Ill. 371, was relied on in support of the plaintiff's contention that the undisputed proof of her possession of the property before her aunt's death made a *prima facie* case of her ownership which defendant failed to overcome by contrary proof, but it was said in regard to that case that aside from the fact that the donee was in possession and claimed the property before the death of the donor there was other testimony tending to show that the donor delivered the notes to the donee a short time before his death with intent to pass title, and it was further said that the court made some observations on the presumption of title from possession and the effect to be given to it, but it was evidently not intended to lay down a rule of law different from that found in other decisions of this court and the decisions of other States generally. The decision of the case was said to be correct because other proof than possession of the donee warranted the conclusion that the donor delivered the notes to the donee with intent to pass the title thereby.

It must be regarded as the settled law in this State that while an equitable interest in negotiable instruments payable to order may be acquired either by gift or contract without indorsement by the payee, the mere possession of negotiable securities payable to order and not indorsed by the payee, or, if indorsed specially, not indorsed by the special indorsee, is not alone evidence of title, either legal or equitable, in the possessor, but the burden of proof is on the possessor to prove his equitable title by showing a delivery to him with the intent to pass the title.

It is the contention of the defendant in error that because of the crowded condition of the back of the note on account of the indorsements of payments there was not room on the part of the note where the assignment was written to write the date to which interest was paid and E. B. Wade's signature, and therefore he wrote such date and his name where he did, intending his name to be his signature to the written assignment. The reason given is not in accordance with the fact. A glance at the back of the note shows that there was at least as much room under the assignment written on the left side of the note as where it was written on the right side of the note, entirely disconnected from the assignment. Indorsements of interest are usually made at the time of payment. The presumption is that all the indorsements were made at the dates they bear. The payments of interest on this note at no time amounted to the interest due, according to the terms of the note, at the time any payment was made. The payment on July 11, 1906, was $125 short of the amount of interest accrued to July 10 at seven per cent, as the note was written, and was $35 short of six per cent, but the indorsement was made to July 10, 1906. The four succeeding indorsements were of $30 each, which was the semi-annual interest at six per cent, and the final indorsement, "to Jan. 10/09," indicated no amount. This fact does not change the rule that indorsements are presumed to have

been made at the dates they bear. This indorsement may have been made subsequent to January 10, 1909, but in the absence of evidence to the contrary the presumption must prevail that it was made on that date.

Section 17 of the Negotiable Instrument act, among other rules of construction, provides that "where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser." And section 63 provides that "a person placing his signature upon an instrument otherwise than maker, drawer or acceptor, is deemed to be an indorser unless he clearly indicated by appropriate words his intention to be bound in some other capacity." The defendant in error insists that no other construction can be placed upon those sections than their express, unambiguous and clear language, and that in the light of that construction it must be held that E. B. Wade indorsed the note and that the defendant in error is the legal holder and owner thereof. We agree that the words require no construction, but we do not assent to the conclusion that Wade must be held to be an indorser of the note. It is clear from an inspection of the document that he did not place his signature on the note in the capacity of an indorser or for the purpose of transferring the title, but he has clearly indicated by appropriate words his intention to be bound only for the receipt of interest to January 10, 1909.

After the master had given notice of his findings and conclusions, counsel for the complainant in the original bill entered his motion in writing that leave be given the complainant to offer in evidence the testimony of Richard J. Collins, Joseph P. Mahoney and Harry E. Parker, Jr., on the question of the ownership of the note. It does not appear that the complainant offered the witnesses or that he could produce them. No statement is made as to what he expected to prove by them and the master overruled the motion, which was not renewed before the chancellor. It

was assigned for error in the Appellate Court that the circuit court erred in denying this motion, but the assignment was not sustained, for the motion was not renewed in the circuit court and the court made no ruling on it.

The judgment of the Appellate Court is reversed and the decree of the circuit court affirmed.

> *Judgment of Appellate Court reversed.* .
> *Decree of circuit court affirmed.*