WALTER W. OEFLEIN, INC., Respondent, vs. VOELL, Appellant.

*December 6, 1934—January 8, 1935.*

132

For the appellant there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *Irving A. Fish, G. R. Hoffman* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish, Mr. Hoffman,* and *Mr. Voss.*

For the respondent there was a brief by *Charles F. Fawsett* and *Olwell & Brady,* all of Milwaukee, and oral argument by *Bernard V. Brady* and *Lawrence A. Olwell.*

WICKHEM, J. Defendant contends, first, that the findings of the trial court are against the great weight and clear preponderance of the evidence. We are satisfied that this contention is without merit. The issue of fact was whether defendant was employed upon a straight salary basis or under

an agreement entitling him to share in the profits of the contract under which the building was constructed. Defendant produced some testimony of statements made by Oeflein in his lifetime, to the effect that defendant was to be employed upon a profit-sharing basis. It is contended that the evidence as to Oeflein's admissions is corroborated by an examination of the accounts of the Oeflein corporation. It is claimed that defendant was debited and credited in this account only on those jobs on which he worked on a profit-sharing basis, and that he is debited with advances on the Northwestern Mutual job. It is claimed that, if his arrangement on that job was to work only on a salary, payments to him would not appear on his account as debits or labeled as "advances." It is claimed that, as his account stands on the books, he is indebted to the Oeflein corporation for the amount of money that has been paid him on the job. That the evidence offered by defendant has some probative force need not be denied. However, it was not conclusive, and in view of considerations hereafter to be set forth, the court was justified in finding that the contract was not established.

In the first place, the alleged admissions of Oeflein are somewhat weakened in their probative tendencies by the fact that the parties had undoubtedly negotiated for, and perhaps contemplated at some time during the progress of the work, closing a contract upon a profit-sharing basis. While it appears that the books designate all payments to defendant upon the insurance job as advances, the bookkeeper testified that her directions from Oeflein were to charge these items to the job, and it appears that the designation of these items as debits and advances was at the direction of Breese, the auditor, who concededly knew nothing of the negotiations between the parties. It is also suggested by defendant that it is extremely unlikely that a person of defendant's qualifications would work for $750 per month, in view of testimony that his services were worth $15,000 to $20,000 per

year. However, there is credible evidence that defendant's services were not worth as much as $750 per month, and defendant's contention thus loses its force. In view of this conflict, the court was justified in concluding that defendant was paid the full worth of his services. The finding that a profit-sharing contract was never concluded, either orally or formally, is supported by the fact of the unexecuted formal contract, and by evidence of admissions of Voell, after the death of Oeflein, to a Miss Bonk, bookkeeper of the Oeflein corporation, and Breese, the auditor, to the effect that he had no contract, and that he would not care for a profit-sharing contract if he had to admit an indebtedness of $15,000 to the plaintiff company.

This brings us to the most important question in the case, and that is whether certain testimony elicited by plaintiff opened the door to proof of transactions had by defendant personally with Walter Oeflein as agent of the plaintiff. Sec. 325.17, Stats., provides:

"No party . . . shall be examined as a witness in respect to any transaction or communication by him personally with an agent of the adverse party . . . when such agent is dead . . . unless the opposite party shall first be examined or examine some other witness in his behalf in respect to some transaction or communication between such agent and such other party or person; or unless the testimony of such agent, at any time taken, be first read or given in evidence by the opposite party; and then, in either case respectively, only in respect to such transaction or communication of which testimony is so given or to the matters to which such testimony relates."

The prohibition of this statute limited defendant in his proof to evidence of admissions by Oeflein to third persons that defendant was to work under a profit-sharing contract, and to such inferences as might be drawn from the books of plaintiff corporation and from the unexecuted written contract drafted to provide for a participation in the profits by

defendant. Breese, the auditor, who had made annual audits for plaintiff company each year since 1925, was examined by plaintiff and testified to a conversation with defendant in the presence of the bookkeeper, Miss Bonk, about three weeks after Walter Oeflein's death. The discussion had to do with defendant's indebtedness to the Oeflein company. Breese stated the balance as he had found it from the books, and defendant denied any indebtedness and stated that he had credits on prior jobs which had never been properly set forth in the account. Breese then informed defendant that he had seen a transcript of a contract or instrument wherein defendant's debit balance had been written down to $15,000. In reply, defendant stated that he had no contract to that effect; that he was not indebted. Breese then asked defendant, "Don't you want this contract on a profit-sharing basis?" and defendant replied, "Yes, but I don't propose to pay $15,000 for it." Miss Bonk, who was the bookkeeper for plaintiff, testified to hearing that conversation, and her testimony was that defendant said "he had no contract on the Northwestern Mutual." She was cross-examined by defendant, and testified to her understanding that the contract referred to had to do with the Northwestern job. It is contended that this testimony opened the door to evidence by defendant of the transactions had personally by him with deceased agent of the corporation, and an offer of such proof was made in accordance with the claim. Reliance is had upon that portion of sec. 325.17 which reads: ". . . unless the opposite party shall first be examined or examine some other witness in his behalf in respect to some transaction or communication between such agent and such other party or person," and upon *Enwright v. Griffith,* 169 Wis. 284, 172 N. W. 156; *Anderson v. Anderson,* 136 Wis. 328, 117 N. W. 801; *Johnson v. Bank of Wisconsin,* 163 Wis. 369, 158 N. W. 59; *Smith's Appeal,* 52 Mich. 415, 18 N. W. 195. It is our conclusion that defendant's position is unsound. The

statement as to which Breese and Miss Bonk testified was one made by defendant after the death of Oeflein; and constitutes an admission by defendant that he had no profit-sharing contract with Oeflein. The waiver provision of the statute can have no application to a transaction occurring out of court subsequent to the death of the decedent and with respect to which decedent could not have testified had he lived. In *Cole v. Sweet,* 187 N. Y. 488, 80 N. E. 355, it was said:

"If the survivor says something on the street or volunteers information as to a transaction he had with a decedent, his statement may be proved against him as an admission without waiving any right under the statute."

See also *Mercantile Safe Deposit Co. v. Dimon,* 55 App. Div. 538, 67 N. Y. Supp. 430; *Morgan v. Foran,* 120 App. Div. 185, 104 N. Y. Supp. 1084; *Rhodes v. Pray,* 36 Minn. 393, 32 N. W. 86; *Nelson v. Masterson,* 2 Ind. App. 524, 28 N. E. 731; *Gibson v. Buis,* 142 Tenn. 133, 218 S. W. 220; *Harper v. Corcoran,* 166 Mich. 474, 132 N. W. 106, 108.

A different rule was applied in *Smith's Appeal, supra,* and *Enwright v. Griffith,* heretofore cited, where the representatives of the decedent examined a disqualified party under oath as a witness upon transactions equally within the knowledge of the decedent, and thereafter upon another trial offered that testimony as an admission. In both these cases such an offer was held to constitute a waiver. In *Anderson v. Anderson, supra,* the evidence which was held to open the door related to a conversation with deceased. The same comment applies to the case of *Johnson v. Bank of Wisconsin, supra,* and it may be added that the case involved no serious question as to the fact of waiver and dealt solely with the effect or scope of the waiver. We are satisfied that here there is no such waiver, and that defendant's offer to prove the transaction with Oeflein was properly denied.

*By the Court.*—Judgment affirmed.