KELLER IMPLEMENT COMPANY, Appellant, v. EITING (Charlotte), Special Administratrix of the Estate of EDWARD L. EITING and CHARLOTTE EITING, Individually, Respondents.

*No. 150. Argued September 7, 1971.—Decided October 5, 1971.*
(Also reported in 190 N. W. 2d 508.)

---

464

For the appellant there were briefs by *Herbert C. Liebmann III* and *Cohen, Grant & Liebmann,* all of Green Bay, and oral argument by *Herbert C. Liebmann III.*

For the respondents there was a brief by *Kaftan, Kaftan, Kaftan & Kuehne* of Green Bay, and oral argument by *Arthur Kaftan.*

ROBERT W. HANSEN, J. If the plaintiff-appellant is correct in claiming that the testimony of Reuben Keller

with regard to an alleged sale of the combine by Edward Eiting to Keller Implement Company was admissible, reversal and new trial are required. So that claim of error will be the first considered.

The testimony of Reuben Keller as to what took place when Edward Eiting brought the combine back to the Keller Implement Company was objected to, and held barred by sec. 885.16, Stats., commonly known as the dead man's statute. This section provides in part:

"No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person, . . . unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. . . ."

*Liability as cosigner.*

Plaintiff objects to the exclusion of testimony on the ground that Charlotte Eiting is being sued, not only as special administratrix of the estate of her husband, but also as a cosigner of the note. Since her liability as cosigner did not come "through or under" the deceased, the dead man's statute, it is contended, is not available to her and the trial court erred in applying it on behalf of defendant, sued as a cosigner of the note.

Defendant answers that, even if she derives her liability directly from the note as a cosigner, Edward Eiting was acting as her agent in the alleged sale of the combine. The fact of agency, if established, would make Reuben Keller incompetent to testify under sec. 885.17, Stats., which bars testimony relating to a transaction

with a deceased agent just as sec. 885.16 bars testimony relating to a transaction or communication relating to a party through whom an interest or liability derives. This argument fails for lack of proof. No evidence establishing the fact of agency in the sale or return of the combine was introduced. Also, Edward Eiting was the sole purchaser named in the conditional sales contract for purchase of the combine. It could be sold by Edward Eiting as sole purchaser without the consent, express or implied, of anyone else.

Defendant denies that she is liable as a cosigner, claiming a lack of consideration for her cosigning because, she asserts, the note was made to pay a past-due open account of her husband, Edward Eiting, not the account or an obligation that she owed. This argument fails. The general rule is that payment of the debt of a maker of a note is consideration for the obligation of a comaker.[1] Wisconsin is in accord, at the very least, in a husband-wife situation. Where the maker of a note asserted as a defense that a part of the debt covered by the note was a debt of his wife's, this court said: ". . . if Pagel gave his note in order to close his wife's account, he is bound as though he gave the note only for his own debt. . . ."[2] Whatever the liability of the defendant as a cosigner, it derives from the fact of her cosigning, not from or through the deceased. Therefore, as to the case against Charlotte Eiting as cosigner, the testimony concerning what transpired at the returning of the combine to the implement dealer should not have been excluded.[3]

---

[1] 11 Am. Jur. 2d, *Bills and Notes,* p. 255, sec. 227.

[2] *T. F. Pagel Lumber Co. v. Webster* (1939), 231 Wis. 222, 225, 285 N. W. 739.

[3] *Fullerton Lumber Co. v. Korth* (1964), 23 Wis. 2d 253, 258, 127 N. W. 2d 1, holding that the dead man's statute applies only " '. . . in any civil action or proceeding in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased . . . person.' "

*Waiver of statute.*

As to the cause of action against Charlotte Eiting as special administratrix of the estate of Edward Eiting, it is clear that her liability, if liability there be, is sustained from and through the deceased. However, plaintiff claims that questions asked of Reuben Keller by defendant's counsel opened the door to further questioning concerning the transaction between the witness and deceased. It is a well recognized exception to the dead man's statute, set forth in the statute itself,[4] that, if counsel for the opposite party questions the witness as to any part of the transaction or communication with the deceased under circumstances where the witness would be incompetent to testify if proper objection were made, the statute is waived.[5]

In approaching the question of whether there was here a waiver of the statute as to the cause of action against the special administratrix, the phrase in the statute "transaction or communication" with the deceased must be considered. Here we have a series of events, all involving the purchaser of a combine and the implement dealer who sold it to him. There is the conditional sales contract; the signing of the note, secured by a chattel mortgage; the cancellation of an open account indebtedness; the further extension of credit on open account; the return of the combine to the implement dealer by the purchaser; the claim of a purchase of the combine by the dealer, paying off the amount due on the conditional sales contract and application of the balance to reducing an open account

---

[4] Sec. 885.16, Stats., providing: ". . . unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. . . ."

[5] *Estate of Schaefer* (1952), 261 Wis. 431, 438, 53 N. W. 2d 427; *Johnson v. Bank of Wisconsin* (1916), 163 Wis. 369, 158 N. W. 59.

indebtedness. Are each of these entirely separate and distinct "transactions" between Edward Eiting and the Keller Implement Company. We would hold that, under the meaning of the word as used in sec. 885.16, Stats., this sometimes puzzling succession of events, all involving the one combine, constitute a continuing "transaction" as the word is used in the dead man's statute.[6] So viewed, did the examination of Reuben Keller, the president of Keller Implement Company, by defendant's counsel open the door to further interrogation as to what took place when the combine was returned to the company by the purchaser?

The witness was asked by defendant's counsel concerning specific dealings between Edward Eiting and the Keller company involving the combine purchased:

"Q.  Now, on September 6, 1961, Mr. Eiting purchased a John Deere combine from Keller's; did he not?
"A.  Yes."
" . . .
"Q.  . . . He bought this on a conditional sales contract; didn't he?
"A.  Yes."
" . . .
"Q.  All right, then, you Kellers went out there and got the machine; didn't you?
"A.  The machine was brought to our property by Mr. Eiting, himself."

The testimony elicited by defendant's counsel established the existence of the conditional sales contract and the details as to the repossession of the combine. After such repossession or return, Edward Eiting still had rights in the combine since it had a value greater than the amount due on the contract. The sale of the combine

---

[6] *See: Estate of Molay* (1970), 46 Wis. 2d 450, 459, 175 N. W. 2d 254, to the point that the scope and effect of dead man's statutes should be limited wherever possible ". . . by insisting upon exceptionally strict rules for its invocation."

by Edward Eiting to the implement company would have resulted in his being paid for such surplus value and would have settled then and there all rights of the purchaser and seller. Clearly, the sale, if sale there was, was the final act in the life of the conditional sales contract and a part of the "transaction" between Edward Eiting and the plaintiff. Elicitation of testimony concerning the origin of the contract and the manner of repossession waived the dead man's statute as to later history or the alleged final chapter of the continuing story. Once that door was opened, the testimony contained in plaintiff's offer of proof clearly was admissible.[7]

*The counterclaim.*

Defendant's appeal of the trial court's denial of her counterclaim for damages requires review of the basis on which the case was decided in the trial court. The trial court found that the plaintiff did not comply with the chattel mortgage foreclosure statute in effect at that time (sec. 241.13, Stats. 1961). The penalty clause of that statute was invoked: ". . . the mortgage debt shall be deemed paid and the mortgage securing same be deemed cancelled." There are two things wrong with that route and result. (1) The penalty clause could not be applied because it had been declared unconstitutional by this court as a taking of property without due process of law.[8] (2) There is no evidence at all in this record to support a finding that a foreclosure of the mortgage ever occurred or was attempted. Repossession or return of the combine to plaintiff as bailee for John

---

[7] ". . . When the door is once opened for one to testify to a communication or transaction had by him personally with a deceased person, the witness may testify, not only to the facts of such communication or transaction, first brought out, but to all 'matters to which' the testimony in the opening 'relates.'" *Johnson v. Bank of Wisconsin,* supra, at page 374.

[8] *Stierle v. Rohmeyer* (1935), 218 Wis. 149, 260 N. W. 647.

Deere Company does not constitute an attempted or completed foreclosure. At the time of the execution of the cognovit note and chattel mortgage, title to the combine was in the John Deere Company, holder of the conditional sales contract.[9] The effect of giving a chattel mortgage is to pass title from the mortgagor to the mortgagee,[10] but here Edward Eiting did not have title at the time he signed the note secured by the chattel mortgage. Whatever the consequences of this unique enough situation as to the validity of the chattel mortgage, the fact is that it was not foreclosed.

This action is an action on a cognovit note. It is well settled that, when a note is secured by a chattel mortgage, the holder has the option of suing on the note or foreclosing on the mortgage.[11] Here plaintiff sued on the note. It is true that plaintiff secured possession of the combine but this was not by foreclosure. Its being returned to plaintiff, then acting as bailee for the John Deere Company, apparently was a repossession, but by or on behalf of the Deere Company. Subsequently plaintiff purchased the conditional sales contract from the Deere Company. That changed title, but not the manner in which possession came about.

It follows that, if the excluded testimony of Reuben Keller that plaintiff bought the combine from Edward Eiting had been admitted and was believed, the plaintiff was unconditionally free to sell it. If such testimony as to the fact of sale had not been believed, the resale of the combine by plaintiff was required to comply with sec. 122.19, Stats. 1961, which regulates sale of goods repossessed under conditional sales contracts. If the sale did not take place within thirty days of the re-

[9] *Minneapolis Securities Corp. v. Silvera* (1948), 254 Wis. 129, 35 N. W. 2d 322.

[10] *Cline v. Libby* (1879), 46 Wis. 123, 49 N. W. 832.

[11] *Bank of Sheboygan v. Fessler* (1935), 218 Wis. 244, 260 N. W. 441.

possession, and if a ten-day notice of sale was not given the cosigners on the note as required by the statute, another statute (sec. 122.25, Stats. 1961) provides the buyer may recover his damages. Retrial here should include retrial of defendant's claim to entitlement to damages. Reversal on the issue of admissibility of evidence requires a new trial on the complaint and counterclaim. The judgment lien of March 1, 1966, is ordered continued, pending the outcome of the new trial herewith ordered.

*By the Court.*—Judgment reversed and cause remanded for a new trial.