## 56669. HENDERSON FEW & COMPANY v. ROLLINS COMMUNICATIONS, INC.

DEEN, Presiding Judge.

On January 9, 1975, Rollins Communications, Inc., (Rollins) brought suit against Henderson Few & Co. (Henderson Few) alleging breach of contract and sought to recover $26,222.66 in damages. In its answer, Henderson Few denied that it was indebted to the plaintiff, but admitted entering into a contract with Rollins for the sale and installation of a telephone system and that two years and eight months later it requested the plaintiff to remove the equipment and refused to make further payments on the seven-year contract. Defendant counterclaimed alleging misrepresentation, faulty installation, and failure to repair the equipment in a workmanlike manner, and sought $250,000 in damages for lost business and income. Later, Henderson Few amended its counterclaim to recover $18,899.65 (the amount claimed to be paid to Rollins toward the purchase of the telephone system) alleging that the equipment was unfit for the purpose intended. In a second amendment to its counterclaim, defendant included a tort claim against plaintiff alleging fraudulent misrepresentation in selling, installing, and servicing the equipment. Rollins' amended complaint sought $28,586.44 in damages. Thirteen months after filing suit, plaintiff removed the equipment, but never disposed of it. This case was tried before a jury on March 21 and 22, 1978, and the trial court granted Rollins' motion for a directed verdict at the close of the evidence on the amount claimed as damages in the plaintiff's amended complaint and against the

*counterclaim.*

1. Defendant contends that the trial court erred in granting Rollins' motion for a directed verdict and argues that the plaintiff relied on the unconscionable and unreasonable liquidated damages provision in the lease agreement as its measure of damages. We find this argument to be without merit. Although the instruments are unclear as to whether the transaction was a sale or lease because they contain provisions relating to both, the evidence showed that the parties executed two contracts on October 18, 1971, which both parties considered to be a sales agreement. Henderson Few's president testified that he signed a purchase agreement for $25,003.79 (the cash sale price of the telephone system) and a financing agreement for $34,939.80 (sale price plus seven years interest) on October 18, 1971. Six additional exhibits were introduced to show six separate orders for additional equipment which was added to the basic system. The financing contract provided for monthly payments to be made over a period of seven years beginning January 1, 1972, and ending December 1, 1978. Payments for the additions were spread out over the remainder of the term of the original agreement. The contract provided that Rollins would service the equipment until the end of the term of the lease if the agreement was a lease; if the agreement was a sale, the warranty on the equipment would expire at the end of one year and an equipment maintenance agreement was available at the purchaser's option. Henderson Few purchased a maintenance agreement to cover the basic system plus the six later additions when the warranty expired. Therefore, we do not find that plaintiff was seeking liquidated damages, but was seeking the balance owed on the sales contract.

Defendant also argues that if the sale was a secured transaction Rollins' case is barred by its total failure to dispose of the collateral. We agree that, under the terms of the contract, the seller retained a security interest in the goods; but we disagree that Rollins' failure to dispose of the goods barred it from seeking a money judgment. "The remedies [available to a creditor under Article 9 of the Uniform Commercial Code] are cumulative and the creditor is not required to reduce himself to the position of

an unsecured creditor so long as he acts in a commercially reasonable manner and does not, by his actions or omissions, further impair the position of the debtor." *McCullough v. Mobiland, Inc.*, 139 Ga. App. 260, 263 (228 SE2d 146) (1976). "This does not mean, however, that the [creditor] owes no duties to defendant with respect to the collateral. . . It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, if the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition. . . If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery." Michigan National Bank v. Marston, 29 Mich. App. 99, 108 (185 NW2d 47) (1970).

Although the UCC has no requirement that a secured party sell the collateral after repossession, see Code Ann. § 109A-9—504 (1), the secured party who does not elect to retain the collateral in satisfaction of the indebtedness as provided in Code Ann. § 109A-9—505, must act in a commercially reasonable manner in disposing of the collateral and the disposition must be made in a commercially reasonable time. Code Ann. § 109A-9—504 (3). The commercial reasonableness of the time of the sale must, of course, be judged from the time of repossession rather than the time the creditor finally chooses to dispose of the goods or the debtor will be injured. (See also Code Ann. § 109A-1—203 which imposes an obligation of good faith in the performance or enforcement of every contract or duty within the scope of the UCC.)

In the present case, Rollins did not act in a

commercially reasonable manner when it repossessed the collateral more than one year after suit was filed, never disposed of it or returned it to the creditor, and apparently did not intend to apply the value of the asset toward liquidation of the alleged debt although a creditor can only recover the amount of the debt. (See Code Ann. §§ 109A-9—502, 109A-9—504 (2) which require an accounting of the surplus proceeds of the collateral.)

An examination of the trial transcript shows that questions of fact requiring resolution by a jury were present in this case; whether Henderson Few breached the contract or whether Rollins was the breaching party at the time the defendant requested the plaintiff to repossess the goods. If the jury should find that Henderson Few breached the contract, Rollins' recovery would have to offset to the extent its inaction in disposing of the goods harmed the defendant, and the value of the goods at the time they were repossessed. Rollins also bears the burden of proving the value of the equipment on the date of indebtedness because they have the burden of proving the amount of the debt, it chooses which options it will exercise to satisfy the debt under the UCC, it has possession of the goods and Code Ann. § 109A-9—504 (3) places the burden of proving the reasonableness of the disposition of the collateral upon the secured party. See *Granite Equip. Leasing Corp. v. Marine Development Corp.*, 139 Ga. App. 778 (230 SE2d 43) (1976).

2. Defendant's contention that Rollins' claim was barred by its failure to pay Georgia intangible taxes upon the account sued upon is without merit. Under Code Ann. § 92-125, wilful failure to list any property with the State Revenue Commissioner acts as a bar to any action upon it in any court and may be pleaded as a complete defense. However, the plaintiff is permitted to pay the tax owed along with a 25% penalty and avoid dismissal of his suit. As defendant did not plead this defense affirmatively and waited until trial to raise it, the trial court did not err in dismissing the motion. *Beets v. Padgett,* 125 Ga. App. 551 (188 SE2d 265) (1972). Even if defendant had pled the affirmative defense, it neither alleged nor proved that plaintiff's failure to file the tax return was wilful. *G. E. C. Corp. v. Southern Fabricators,* 122 Ga. App. 452 (177

SE2d 497) (1970). Defendant's reliance upon *Moore v. Todd,* 223 Ga. 702 (157 SE2d 587) (1967), is misplaced. In that case, the affirmative defense was pleaded.

3. It was not error for the trial court to deny defendant's motion for a directed verdict and an oral motion to dismiss for the reasons stated in Divisions 1 and 2.

4. It was, however, error for the trial court to grant plaintiff's motion for a directed verdict on defendant's counterclaim, as part of the counterclaim was in tort for fraudulent misrepresentation, and the trial court erred in ruling that testimony about the misrepresentations was barred by the parol evidence rule. This rule applies to the proof of the terms of a contract. See Code Ann. § 20-704.

5. Defendant's remaining enumerations need not be decided as the case is to be tried again.

*Judgment reversed. Smith and Banke, JJ., concur.*

SUBMITTED OCTOBER 3, 1978 — DECIDED NOVEMBER 2, 1978 — REHEARING DENIED NOVEMBER 16, 1978 —

*Horton & Crim, Candler Crim, Jr.,* for appellant.
*Arnall, Golden & Gregory, Earnest H. Delong, Jr., Charles L. Gregory,* for appellee.