72239. C. ITOH INDUSTRIAL MACHINERY, INC. v. FORKLIFT SERVICE COMPANY, INC. et al.
(348 SE2d 551)

BENHAM, Judge.

Appellant, a distributor of forklift trucks, entered into a retail dealer agreement with appellee Forklift Service Company, Inc. ("Forklift"). By means of a "Deferred Payment Purchase Agreement" ("DPPA"), appellant agreed to finance Forklift's purchases of forklifts, and individual appellees Moore, Wilson, and Petite executed unconditional guaranties of payment of any and all debts of Forklift to appellant. Appellant was also given a security interest in Forklift's present and future inventory of forklifts acquired from appellant, as well as in the proceeds of the sale or lease of those forklifts. In September 1980, asserting that Forklift had not complied with the retail dealer agreement, appellant informed Forklift and the individual guarantors it was accelerating all amounts due "per Section 3 of the D.P.P.A." The debt remaining unsatisfied, appellant filed suit against all the appellees to recover the balance due, interest, and attorney fees. After a bench trial, appellees moved for and were granted an involuntary dismissal on the ground that appellant had not complied with OCGA § 11-9-504. Appellant seeks review of the trial court's action.

After appellant accelerated the debt, it discovered that several forklifts shipped to Forklift were not part of Forklift's inventory, and that the full and final payment due on those forklifts within seven days of sale, rental, lease or use (as required under the terms of the DPPA) had not been received by appellant. Appellant found two of the missing forklifts in the possession of one of Forklift's guarantors, another leased to and in the possession of Universal Form Clamp, and

one in the possession of Southern Pan. The lease payments from Universal Form Clamp were diverted by appellant from Forklift to appellant, and after making several monthly payments, Universal made one lump sum payment to appellant, which then announced its security interest was satisfied in full through payment of all sums owing and outstanding. Appellant's controller testified at trial that the forklift was sold to Universal at a private foreclosure sale, and that no other potential buyers were contacted or bids solicited.

Appellees maintain appellant's lawsuit sought payment of a debt secured by all of Forklift's inventory and that appellant sold one piece of that inventory to Universal in a commercially unreasonable manner, thereby adversely affecting appellant's endeavors to collect the amounts due on the remaining pieces of equipment. *Farmers Bank, Union Point v. Hubbard*, 247 Ga. 431, 436 (276 SE2d 622) (1981). Appellant, on the other hand, contends it sought recovery of separate debts incurred on each of the missing pieces of machinery and that the disposition of the forklift to Universal does not affect its ability to collect the unpaid balances of the remaining equipment. The trial court found appellant to have conducted a commercially unreasonable sale of the Universal forklift, and since the testimony of appellant's witness supports this finding, we cannot hold that the trial court erred in dismissing the suit. OCGA § 9-11-41 (b); *Farmers Bank*, supra.

Appellant cites *Jerkins v. Savannah &c. Credit Assn.*, 157 Ga. App. 652 (278 SE2d 431) (1981), as authority for the proposition that the invoices should be treated as separate entities. In *Jerkins*, eight separate security agreements were executed by the parties. That is in marked contrast with the case before us wherein appellant and Forklift executed one document by which appellant took a security interest in every forklift it shipped to Forklift.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur. Banke, C. J., and Birdsong, P. J., concur specially. Deen, P. J., Carley, Sognier and Beasley, JJ., dissent.*

BANKE, Chief Judge, concurring specially.

The lease contract between Forklift and Universal was not introduced into evidence, and the transcript does not otherwise contain evidence to support the dissent's conclusion that the appellant simply left the forklift in Universal's possession, to be disposed of "precisely as Forklift had provided by contract." The burden is on the secured party to prove that the sale of the collateral is commercially reasonable. See *Granite Equip. Leasing Corp. v. Marine Dev. Corp.*, 139 Ga. App. 778, 779 (230 SE2d 43) (1976); *Henderson Few & Co. v. Rollins Communications*, 148 Ga. App. 139, 142 (250 SE2d 830) (1978). Thus, finding no evidentiary basis for a conclusion that Universal had any

ownership rights in the forklift until it purchased the property at what the appellant's own controller termed a "foreclosure sale," I concur in the majority opinion affirming the judgment of the trial court.

I am authorized to state that Presiding Judge Birdsong joins in this special concurrence.

BEASLEY, Judge, dissenting.

I respectfully dissent. The forfeiture of the "deficiency" hinges on what has been construed as unlawful dealings by Itoh with respect to the forklift being leased to Universal. OCGA § 11-9-504 (1) applies only to those situations where the secured party after default "sell[s], lease[s] or otherwise dispose[s] of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." But there has been no sale, lease or disposition of the collateral by the secured party here, so OCGA § 11-9-504 does not apply to the facts of this case. The testimony of the controller concerning the legal ramifications of Itoh's actions does not control the analysis.

Although a creditor need not gain actual physical control of the collateral to arrange for its disposition, the appellant creditor never gained any control, physical or constructive, so as to be in the position to sell, lease or otherwise dispose of the forklift which Universal had leased from the debtor. The creditor simply honored Forklift's contractual obligation with its customer, Universal, recognizing the contractual rights of Universal to lease and continue using the forklift under its arrangement with Forklift. Appellant chose not to disturb the pre-existing contract between Forklift and Universal. Far from interrupting debtor Forklift's agreement, it exerted no control at all over the collateral and simply left its disposition to be made precisely as Forklift had provided by contract.

Appellant merely exercised a right of collection of the *proceeds* of the lease, as authorized by OCGA § 11-9-502 (1). It utilized the available statutory right to take control of the lease payments, to which it was entitled under § 11-9-306. Its action did not invade or ignore or interfere with the rights and liabilities of Forklift or its customer. To the contrary, it respected them. In obtaining the proceeds of this arrangement, which it had a right to do and which to a large extent were due it under its own contract with Forklift, Itoh merely mitigated the damages which Forklift had created by default and by the failure to pass payments on and honor its own contractual commitments to appellant.

Because I find OCGA § 11-9-504 inapplicable, I find no bar to the collection of the debt due and I would reverse the order of the trial court.

I am authorized to state that Presiding Judge Deen, Judge Car-

128

ley, and Judge Sognier join in this dissent.

DECIDED JULY 8, 1986 —
REHEARING DENIED JULY 31, 1986 

*Melody R. Hennick, W. Carey Herin,* for appellant.
*Kevin W. Sparger,* for appellees.