LEVY, Judge.
This case involves an Estate’s appeal and a widow’s cross-appeal from a final judgment which awarded one $100,000.00 bearer bond to the Estate, and one $100,000.00 bearer bond to the widow. We hold that the trial court erred in deciding that the bonds were jointly owned.
Morton and Phyllis Silberman were married in 1983. Both were experienced and successful business persons. Morton was 59 at the time of the marriage and had a net worth in excess of $4,500,000.00. Phyllis was 52 at the time of the marriage and had a net worth of approximately $2,500,-000.00. The Silbermans entered into an antenuptial agreement three weeks prior to the marriage which contained a provision that each would retain any personal property at the time of the marriage, but that each “reserved the right to make gifts to (the other) of property during the marriage. ...”
Morton moved into Phyllis’s apartment. Phyllis added Morton’s name to her personal safety deposit box. Seven months after the marriage, Morton unexpectedly suffered a fatal heart attack while out of town.
*80 One month after Morton’s death, his Estate’s personal representatives requested that Phyllis give an accounting of Morton’s property and its whereabouts. Phyllis included two $100,000.00 bearer bonds in her list of various items of personal property given to her as gifts by Morton. According to Phyllis, the two bearer bonds were given to her as a gift by Morton during a romantic dinner at the apartment sometime during the December holiday season in 1983. She kept the bonds at her apartment for several days, and then placed them in the couple’s joint safety deposit box. Phyllis subsequently used the bonds as collateral in her personal business.
The Estate’s personal representatives demanded that Phyllis return the two bearer bonds. She refused and the Estate filed a complaint for compensatory and punitive damages claiming conversion of the bonds. Prior to trial, the parties stipulated that Morton had owned the bonds prior to Phyllis’ obtaining possession, and that the basis for Phyllis’ claimed ownership was that the two bonds were an inter vivos gift.
At trial, the court excluded portions of Phyllis’s testimony, under the Deadman’s Statute, regarding oral communications between Phyllis and Morton that allegedly occurred during and after the dinner at which the bonds were allegedly handed to Phyllis.
The trial court rejected the Estate’s conversion claim, and divided the two bonds, based on its finding that the bonds had not been gifted from Morton to Phyllis, but had become the joint property of both.[1] Accordingly, the court ordered that one-half of the property be awarded to Phyllis and, consistent therewith, entered judgment in favor of the Estate for $100,000.00 (representing the value of the second bond) plus pre-judgment interest at 12%.
Both parties expressly stipulated that, unless it was proven that Phyllis obtained the bonds as an inter vivos gift, the bonds were the sole property of Morton and thus became Estate property. A court is not free to disregard a pretrial stipulation, see State Road Department v. Kilgore, 300 So.2d 734 (Fla. 2d DCA 1974). Furthermore, there is no basis in the record to support the trial court’s finding that the bonds had become joint property. The trial court erred in concluding that the $200,000 in bearer bonds had become joint property and, thus, erred in dividing the bonds equally between Phyllis and the Estate.
Furthermore, we find that the trial court erred in refusing to admit into evidence Phyllis’s testimony. Phyllis was called by the Estate, as the Estate’s first witness. The Estate sought to invoke the Deadman’s Statute, and then proceeded to inquire into the details of the circumstances surrounding Phyllis’s receipt of the bonds and her subsequent use of them as collateral. The following colloquy took place:
ESTATE: And it is correct, is it not, that at no time did you ask for his [Morton’s] consent to collateralize the bonds in connection with the business transaction in the Bahamas?
PHYLLIS: Ask for his consent?
ESTATE: You did not ask for his consent, did you?
PHYLLIS: No.
Phyllis was not allowed to explain her answer because the Estate invoked the Deadman’s Statute to preclude references to the dinner conversation at which Phyllis claimed the bonds were gifted to her by Morton. The trial court excluded Phyllis’s testimony as to the oral communications at the dinner, but did permit a proffer. We hold that the trial court erred in precluding Phyllis’s complete testimony.
When one party in a case calls, as a witness, an adverse party who would ordinarily be prohibited from testifying by the Deadman’s Statute, and then proceeds to question that adverse party about the protected transactions or communications, the *81 questioning party has waived the protection of the Deadman’s Statute. Mathews v. Hines, 444 F.Supp. 1201 (M.D.Fla.1978); Disbro v. Boyce, 124 So.2d 756 (Fla. 3d DCA 1960). See also Matter of Wood’s Estate, 52 N.Y.2d 139, 436 N.Y.S.2d 850, 418 N.E.2d 365 (1981) (once executor opens door as to otherwise inadmissible testimony regarding personal transactions with decedent, that testimony is admissible to fully explain the transaction); Mortensen v. Trammell, 604 S.W.2d 269 (Tex.Civ.App.1980) (same); Johnson v. Peterson, 43 Wash.2d 816, 264 P.2d 237 (1953) (same); Keller Implement Co. v. Eiting, 52 Wis.2d 460, 190 N.W.2d 508 (Wis.1971) (same). As the court noted in Mathews v. Hines, 444 F.Supp. at 1209 (quoting Small v. Shure, 94 So.2d 371, 374 (Fla.1957)): “A party should not be allowed to make use of part of the possible testimony of a witness which is favorable to him, and to exclude the remainder which may be prejudicial.” Here the Estate “opened the door” as to the otherwise protected oral communications between Morton and Phyllis, and thus the testimony is admissible to allow Phyllis to fully explain her possession of, and right to, the property.
Accordingly, we reverse and remand to the trial court in order for the trial court to admit Phyllis’s testimony as to the dinner conversation, and, upon admitting this evidence, to determine whether the bonds were gifted to Phyllis by Morton. If, upon remand, the trial court determines that the bonds were gifted to Phyllis, then both bonds should be awarded to Phyllis. Alternatively, if it is determined that the bonds were not gifted, then both belong to the Estate, and a further determination will have to be made as to the Estate’s claims for conversion, attorney’s fees, and prejudgment interest.
Reversed and remanded with instructions.

. The court specifically stated in its Final Judgment:
The Court finds from all of the testimony that, the $200,000.00 bearer bonds were not gifted from Mort to Phyllis, but became the joint property of both, and upon Mort’s death, one-half of the property, or $100,000.00 became Estate property.