James L. DORMAN, Donald R. Wagner and H. Frank
Boock, Plaintiffs-Respondents,

v.

Gerald MORRIS, Defendant-Appellant.

Court of Appeals

*No. 92–2727. Submitted on briefs November 3, 1993.—Decided
June 14, 1994.*

(Also reported in 519 N.W.2d 685.)

For the defendant-appellant the cause was submitted on the briefs of *Gregory J. Cook* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the briefs of *James L. Dorman, Donald R. Wagner, H. Frank Boock* and *Patrick B. Howell* of *Frisch Dudek, Ltd.* of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J. Gerald Morris appeals from a grant of summary judgment to the plaintiffs, who were secured creditors who brought a separate, independent action for money damages against Morris while holding collateral pledged by Morris. We conclude that a

846

secured creditor can retain a debtor's collateral while seeking an independent action for a money judgment. We affirm.

The following facts are undisputed. In March of 1990, Morris received a loan from First Wisconsin National Bank for $150,000. The plaintiffs, through their partnership, Falcon Investments, guaranteed the loan. To induce the plaintiffs to guarantee the loan, Morris executed a collateral security agreement by which he pledged all the common stock he owned in S & H Quality Products, Inc. Pursuant to the collateral security agreement and an escrow agreement Morris signed, the stock certificates were delivered to an escrow agent (who also happened to be the attorney representing the plaintiffs) to be held as collateral to perfect the security lien on the stock certificates.

In September of 1990, Morris defaulted on the loan. The plaintiffs satisfied the debt owed to First Wisconsin and First Wisconsin endorsed the note over to the plaintiffs. Morris executed a "Waiver of Notice" acknowledging that he was relinquishing any further right to notice of any sale of the stock as might otherwise be required. Instead of first disposing of the collateral and seeking a deficiency judgment, the plaintiffs sued Morris to enforce the note, seeking, *inter alia*, a money judgment for the loan principle plus interest. After suit was filed, the plaintiffs offered to sell the stock to Morris. Morris subsequently obtained an *ex parte* order prohibiting the escrow agent from selling the stock. *See* § 813.025, STATS. The plaintiffs then had the value of the stock appraised and, although Morris claimed it was worth much more, as of April 30, 1991, the appraised value of the stock was only $2,500. Morris's motion for temporary injunctive relief was subsequently denied at a hearing held July

31, 1991. According to the record, however, the stock remains unsold, in the possession of the escrow agent.

The plaintiffs moved for summary judgment, arguing that there were no genuine material disputed facts, and that the only issue was Morris's default and non-payment of the indebtedness under the note, which Morris did not dispute. Morris, on the other hand, contended that the plaintiffs failed to deal with the collateral in a commercially reasonable manner because of the plaintiffs' refusal to sell the stock to a third party. The trial court concluded that there were no material issues given that the existence of the loan, the default, and the guarantee were undisputed. Morris appeals.

■

Section 802.08, STATS., governs summary judgment methodology. That methodology has been described in many cases, *see, e.g., Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476-477 (1980), and need not be repeated here. We review a trial court's decision to grant or deny summary judgment *de novo. See id.*

■

As noted, the relevant material facts in this case are undisputed. Therefore, we only determine whether the plaintiffs are entitled to a judgment as a matter of law. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Morris argues that the plaintiffs' failure to sell the collateralized stock constitutes a violation of the "commercial reasonableness doctrine." *See* § 409.504, STATS. Morris further argues that summary judgment was inappropriate because issues of fact supposedly exist regarding the plaintiffs' handling of the stock and because the value of the stock remains to be determined.

Morris's arguments are misplaced. A creditor in possession of a debtor's collateral "must use reasonable care in the custody and preservation" of the collateral. Section 409.207(1), STATS. Section 409.504, STATS., however, does not require a creditor in possession to dispose of the collateral. Nevertheless, whether the plaintiffs acted with "commercial reasonableness" or "reasonable care" regarding the stock is not at issue in this lawsuit. This lawsuit deals only with the $150,000 promissory note Morris signed. Morris brought no counterclaim or other ancillary proceeding regarding the handling or disposition of the stock, and, therefore, any issue in that regard is not before us.

By law and by the provisions of the collateral security agreement, the plaintiffs properly could seek a money judgment while retaining possession of the stock Morris pledged as collateral. The collateral security agreement Morris signed states:

> In the event of any default in any obligation to be performed under the guaranteed note and said default continues for a period of thirty (30) days, Falcon may give verified notice of the default to the escrow agent and the escrow agent shall deliver the shares of stock held in escrow to Falcon. *Immediately upon receipt of any shares from the escrow agent, Falcon may elect any remedy provided by law including the right to sell all or any part of the stock at public or private sale at which Falcon may bid and purchase said stock. If* Falcon elected to sell the stock, after sale, he shall first apply the proceeds of sale to the expenses of sale,. . . and then to the satisfaction of the unpaid amounts due under the guaranteed note, and the surplus, if any, to be delivered to Gerald Morris. *At the option of Falcon, they may elect strict foreclosure of the collateral by*

*retaining collateral in exchange for discharge of the debt for which the collateral is pledged.*

(Emphasis added.) The collateral security agreement plainly allows the plaintiffs to "elect any remedy provided by law including the right to sell" the collateral.

Additionally, § 409.501(1), STATS., clearly states:

> When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in ss. 409.501 to 409.507 and except as limited by sub. (3) those provided in the security agreement. The secured party may reduce the claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in s. 409.207. The rights and remedies referred to in this subsection are cumulative.

*See Keller Implement Co. v. Eiting*, 52 Wis. 2d 460, 470, 190 N.W.2d 508, 513 (1971) (creditors' remedies are cumulative upon debtor's default). Nowhere under §§ 409.501–.507 is compulsory disposition of the collateral or acceptance of the collateral in exchange for discharge of Morris's debt required so as to preclude the plaintiffs' ability to seek a money judgment. A creditor in possession of a debtor's collateral is not required to reduce its position to that of an unsecured creditor so long as the creditor acts in a commercially reasonable manner and does not, by act or omission, further impair the position of the debtor. *See McCullough v. Mobiland, Inc.*, 228 S.E.2d 146, 148 (Ga. Ct. App. 1976).

> "The existence of a security interest in no way affects the existence of the debt. It merely provides the secured party with an immediate source of recovery in addition to the standard remedies of an unsecured creditor. . . .[T]he intent of the [U.C.C.] Code was to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies."

*Id.* at 148-149 (citation omitted); *see also Ingersoll-Rand Fin. Corp. v. Atlantic Management & Consulting Corp.*, 717 F.Supp. 1067, 1069-1070 (D. N.J. 1989); *ITT Terryphone Corp. v. Modems Plus, Inc.*, 320 S.E.2d 784, 786-787 (Ga. Ct. App. 1984); *Henderson Few & Co. v. Rollins Communications, Inc.* 250 S.E.2d 830, 832 (Ga. Ct. App. 1978); *Kimura v. Wauford*, 719 P.2d 451, 452-454 (N.M. 1986); *Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.*, 596 N.Y.S.2d 230, 232 (N.Y. App. Div. 1993); *Chemical Bank v. Alco Gems Corp.*, 543 N.Y.S.2d 426, 428 (N.Y. App. Div. 1989). Thus, a creditor in possession of a debtor's collateral may employ a number of different remedial steps until the debt is satisfied and the creditor is made whole. Accordingly, we reject Morris's argument regarding the commercial reasonableness of the plaintiffs' refusal to dispose of the collateral. That issue is not before us and, under the applicable statutes and according to the collateral security agreement, the plaintiffs had the option of retaining the collateral while seeking a money judgment.

Therefore, summary judgment was appropriate and we affirm the judgment for the plaintiffs.

*By the Court.*—Judgment affirmed.