648 So.2d 806 (1995)
John R. McKINLAY, Appellant,
v.
Louise R. McKINLAY, a/K/a Ellen Louise McKinlay, Appellee.
No. 92-89.
District Court of Appeal of Florida, First District.
January 4, 1995.
*807 Joseph E. Warren, Jacksonville, for appellant.
Christopher R. DeMetros of Matthews, Mitchell & DeMetros, P.A., Jacksonville, for appellee.
MICKLE, Judge.
John R. McKinlay, the former husband (Husband), appeals from an August 1991 final order disposing of real and personal property. He alleges three errors: 1) the trial court's failure to enforce the parties' mediation agreement and to impose sanctions; 2) the refusal to permit the mediator to testify in response to allegations made by Louise R. McKinlay, the former wife (Wife), who had questioned the fairness and propriety of the mediation proceedings but claimed a privilege as to mediation communications; and 3) the trial court's division of property. Finding error as to the second issue, we are constrained to reverse and remand for a full evidentiary hearing. § 90.507, Fla. Stat. (1989) (waiver of privilege by voluntary disclosure).
The original proceedings in this prolonged litigation were initiated in May 1985, when Wife filed a petition to dissolve the parties' 17-year marriage. After a hearing in 1986, the lower tribunal issued a final judgment of dissolution of marriage, which was reversed and remanded in Husband's first appeal. McKinlay v. McKinlay, 523 So.2d 182 (Fla. 1st DCA 1988).
Upon remand, the trial court issued orders in October 1989 setting the cause for final hearing but also referring the parties to mediation during the interim period. § 44.302(1), Fla. Stat. (1989) (permitting trial court to refer contested civil action to mediation). Husband, Wife, and their attorneys attended the December 8, 1989, mediation conference and, with the mediator, all signed a "Stipulation of the Parties" indicating their settlement as to terms involving the distribution of real property, an investment plan, boats, cemetery lots, personal property, life insurance policies, and attorney's fees and costs. On the "Disposition of Mediation Conference" form, the mediator checked "Agreement signed (total resolution)." The stipulation and the mediator's report were filed immediately in the trial court.
In a letter dated December 8, 1989, Wife informed her then-trial counsel, "I do not believe the stipulation agreement that we signed earlier today was fair to me." She alleged that she had been "under severe emotional distress" and had been pressured into signing the agreement. In a letter dated December 14, 1989, Wife's former trial counsel notified Husband's lawyer as follows: "Please be advised that I have been informed by Ms. McKinlay that she, as a result of numerous factors occurring at the time of the mediation, feels that she no longer wishes to abide by the terms of the mediation agreement as signed."
On February 1, 1990, Husband filed a motion to enforce the mediation agreement and *808 to impose sanctions, noting 1) the lapse of 10 days since the filing of the stipulation and report and 2) the absence of a written objection to the stipulation by the trial court. Husband argued that the agreement had become binding on the parties pursuant to Fla. R.Civ.P. 1.730 and that Wife had failed to comply with procedural requirements for objecting to the result.
In a February 14, 1990, letter to the trial judge, Wife complained of being "trapped in a dilemma," and she alleged first that Husband's counsel had "badgered" and "intimidated" her at every deposition and hearing and had given "inaccurate information" to the mediator. Second, Wife contended that her own former counsel had instructed her to sign the mediation agreement on the ground that "his attorney fees to pursue this would be more than the outcome would be worth." Third, she stated that the mediator had pressured her into signing the agreement. Wife asserted that she had been under severe emotional distress at the time of the mediation conference because of a family health emergency, and she sought to have the agreement cancelled.
At an unreported hearing on February 15, 1990, the trial court received Wife's letter, sealed the correspondence between Wife's and Husband's counsel, and heard Wife's testimony alleging prior intimidation and indicating her wish not to abide by the "forced" terms of the mediation agreement. In a February 23, 1990, order on Husband's motion, the trial court stated:
While the Florida Rules of Civil Procedure contemplate a filed objection to the Stipulation and Agreement the court finds that the Husband was not prejudiced inasmuch as counsel for the Husband was aware that the Wife was not willing to agree by the Stipulation and Agreement. Additionally, this cause was set for final hearing prior to the time that the mediation conference [was set,] and the final hearing was not taken off the calendar or postponed as a result of the attempted mediation.
After denial of his motion for enforcement and sanctions, Husband moved for rehearing alleging 1) that the parties had entered into a valid and binding contract on December 8, 1989, prior to the submission of the mediation agreement and report to the trial court, and 2) that Husband had been severely prejudiced by having to incur the expense of trial as a result of the non-enforcement of the agreement. Subsequently, Wife hired new counsel.

Issue I
The first issue requires us to determine whether the trial court properly found that Wife's written objection and subsequent allegations warranted an evidentiary hearing. Subsection (b) of Rule 1.730, effective January 1, 1988, Rules of Civ.Proc., in re Proposed Rules for Implementation of Fla. Stat. Sections 44.301-.306, 518 So.2d 908 (Fla. 1987), provided as follows:
In cases where agreement or partial agreement is reached as to any matter or issue, including legal or factual issues to be determined by the court, such agreement shall be reduced to writing, signed by the parties and their counsel, if any, and be immediately thereafter submitted to the court. If counsel neither signs nor objects, in writing, to the agreement within 10 days of service on counsel, then the agreement is conclusively presumed to be approved by counsel and shall then be immediately submitted to the court. Once the agreement becomes binding upon the parties by their execution and that of their counsel, it may only be set aside by the court pursuant to these rules. The agreement shall set forth all relevant statements of fact and statements of future courses of conduct as agreed upon by the parties.
The record demonstrates that the mediation proceedings concluded on December 8, 1989, with a settlement stipulation signed by Husband and Wife, their attorneys, and the mediator, and with the mediator's signed disposition indicating a total resolution of issues. Both documents were filed immediately in the lower tribunal.
Written notification of objection was provided to Husband's counsel in the form of Wife's attorney's letter dated December 14, 1989. This letter indicated that "numerous factors occurring at the time of the mediation" made Wife unwilling to abide by *809 the terms of the agreement. Although not a model of clarity, Rule 1.730 contemplates counsel's making a written objection to a mediated settlement agreement and is consistent with decisional law permitting analogous agreements to be modified or set aside upon the former spouse's establishing that it was procured by fraud, intimidation, or duress. Casto v. Casto, 508 So.2d 330, 333 (Fla. 1987). The letter offered by Wife's counsel to Husband's attorney, which was dated December 14 and was received on December 16, 1989, was sufficient to apprise opposing counsel that Wife was objecting and wished not to abide by the terms of the mediation agreement. At that point, the final agreement remained subject to a modification or set-aside "by the court pursuant to these rules." Therefore, we conclude that the matter was properly before the trial court for consideration of evidence addressing the agreement's validity, enforceability, and potential modification. Work v. Provine, 632 So.2d 1119, 1121 (Fla. 1st DCA 1994) (modification of property settlement incorporated into final judgment of dissolution may be had if party seeking modification can satisfy exceptionally heavy burden of showing, e.g., fraud or duress).

Issue II
The second issue arose during the evidentiary hearing held on April 4, 1990, in part to address the issue of enforcement of the mediation agreement. In response to Wife's earlier allegations of intimidation or duress in the mediation proceedings, Husband sought to have the mediator testify. Wife's counsel objected on the ground that mediated matters are privileged and inadmissible over objection pursuant to section 44.101(3) and section 44.302(2), Florida Statutes. Husband's attorney countered that Wife had waived her privilege by challenging the conduct and integrity of the mediation proceedings, and by fully presenting her allegations in writing and in testimony at the unreported hearing. Finding that Wife had exercised her procedural right to object to the mediation results and had not waived her right to exclude testimony concerning mediation communications, the trial court refused to allow the mediator either to testify or to proffer testimony. That ruling constitutes reversible error.
The trial court based its decision first on section 44.101(3), Florida Statutes (1989), which provided in pertinent part:
(3) Notwithstanding the provisions of s. 119.14 [public meeting and record requirements], all oral or written communications in mediation proceedings are exempt from the requirements of chapter 119 and shall be confidential and inadmissible as evidence in any subsequent legal proceeding, unless both parties agree otherwise.
Second, the court relied on section 44.302(2), Florida Statutes (1989) [subsequently renumbered § 44.102(2)], which stated:
(2) Each party involved in the mediation proceeding has a privilege to refuse to disclose, and to prevent any person present at the proceeding from disclosing, communications made during such proceeding whether or not the dispute was successfully resolved. This subsection shall not be construed to prevent or inhibit the discovery or admissibility of any information which is otherwise subject to discovery or admission under applicable law or rules of court. There is no privilege as to communications made in furtherance of the commission of a crime or fraud or as part of a plan to commit a crime or a fraud. Nothing in this subsection shall be construed so as to permit an individual to obtain immunity from prosecution for criminal conduct.
The trial court found that Wife had not waived her statutory privilege.
The parties have called our attention to Hudson v. Hudson, 600 So.2d 7 (Fla. 4th DCA 1992) (as modif. on reh'g), in which the reviewing court reversed upon a finding that admission of evidence pertaining to an oral mediation agreement had tainted the judgment. Id. at 9. Although Hudson supports Wife's position that mediation communications generally are confidential and inadmissible in a subsequent legal proceeding unless all parties agree otherwise, we find several key factual distinctions between the cases. First, the instant mediation proceedings resulted in a signed, written agreement. Cf. Gordon v. Royal Caribbean Cruises, Ltd., *810 641 So.2d 515 (Fla. 3d DCA 1994) (under Rule 1.730(b), "confidentiality afforded to parties involved in mediation proceedings must remain inviolate" where parties failed to effectuate a written, signed settlement agreement). Second, we note that, unlike the case sub judice, Hudson and its progeny were subject to an amendment to chapter 44, Florida Statutes, effective October 1, 1991, which provided that "[n]otwithstanding the provisions of s. 119.14, all oral or written communications in a mediation proceeding, other than an executed settlement agreement, ... shall be confidential and inadmissible as evidence in any subsequent legal proceeding, unless all parties agree otherwise." 1990 Fla.Laws ch. 90-188, § 2, amending and renumbering § 44.302, Fla. Stat. (Emphasis added.)
Third, and most significant, is the fact that as the party who objected to the settlement based on allegations of duress and intimidation, Wife availed herself of the opportunities to file a written letter to the trial judge and to testify at the unreported February 15, 1990, hearing. However, with only her side of the story presented, she invoked a statutory privilege to preclude testimony or a proffer from other witnesses such as the mediator. These particular facts lead us to conclude that Wife waived her statutory privilege of confidentiality and that, as a result of the waiver, it was error and a breach of fair play to deny Husband the opportunity to present rebuttal testimony and evidence.
Our conclusion is bolstered by the general body of law holding that certain analogous statutory privileges, e.g., the psychotherapist-patient privilege set forth in section 90.503, Florida Statutes, and the lawyer-client privilege set forth in section 90.502, Florida Statutes, can be waived. See, e.g., Procacci v. Seitlin, 497 So.2d 969 (Fla. 3d DCA 1986) (attorney-client privilege waived by client's suit for malpractice). Section § 90.507, Florida Statutes, provides:
A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if he, or his predecessor while holder of the privilege, voluntarily discloses or makes the communication when he does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication.
Given that Wife invoked the privilege at the April 1990 hearing while challenging the prior conduct or statements of the attorneys and the mediator, we are drawn inescapably to conclude that she thereby voluntarily disclosed or consented to the disclosure of a significant part of the matter or communications for which the privilege was claimed. The same basic considerations involved here underlie those cases in which a party seeking the protection of the so-called Dead Man's Statute, section 90.602, Florida Statutes, has availed itself of certain testimony or other evidence, thereby "opening the door" to matters otherwise sought to be excluded and waiving the very privilege asserted. See, e.g., Smith v. Silberman, 557 So.2d 78 (Fla. 3d DCA 1990); In re Estate of McCoy, 445 So.2d 680 (Fla. 2d DCA 1984); Sessions v. Summers, 177 So.2d 720 (Fla. 1st DCA 1965). Likewise, the accountant-client privilege can be waived in certain circumstances. Savino v. Luciano, 92 So.2d 817, 819 (Fla. 1957) (defendant invoking accountant-client privilege as to an audit waived the right when he relied on the audit to prove a defense and counterclaim).
Having found reversible error as to the second issue, we need not reach the final issue relating to the property distribution scheme. The order is REVERSED and the cause is REMANDED for further proceedings consistent herewith.
WOLF, J., concurs.
WEBSTER, J., concurs in result only.